439 So.2d 233 (1983)
Milton B. BECKERMAN, Appellant,
v.
Robert GREENBAUM, As Personal Representative of the Estate of Bernard Greenbaum, D/B/a Bernard Greenbaum & Associates, a Partnership, and Bernard Greenbaum & Associates, Inc., a Corporation, Appellees.
No. 82-1558.
District Court of Appeal of Florida, Second District.
August 3, 1983.
Rehearing Denied October 10, 1983.
*234 Stephen C. Chumbris and Zala L. Forizs of Greene, Mann, Rowe, Stanton, Mastry & Burton, St. Petersburg, for appellant.
Anthony S. Battaglia and Michael L. Hastings of Battaglia, Ross, Hastings, Dicus & Andrews, St. Petersburg, for appellees.
OTT, Chief Judge.
This appeal essentially involves three questions: the allowance of certain "deductions" from gross profit as fairly contemplated by the contract of the parties; the admission of certain "supplemental records" as business records of appellees to establish such deductions; and the denial of prejudgment interest. We reverse as to certain of the deductions as indicated herein, the admission of the supplemental records as business records, and the denial of prejudgment interest.
In 1966 appellee partnership employed appellant to promote a specific office building complex with prospective commercial tenants. Pursuant to a written letter agreement appellant was to receive as additional compensation five percent of the net profits realized during the operation or upon a sale of the complex. The parties agree no profit was realized in the operation *235 of the complex. The complex was ultimately sold on November 26, 1974. The gross profit from the sale was $1,008,137.[1]
The written agreement of the parties, dated December 19, 1966, specified certain obligations either existing or contemplated which were to reduce the gross profit from the sale before computing the five percent of the net profit payable to appellant.
Following the sale of the complex, appellant demanded his five percent and an accounting as to the computations of the net profit pursuant to the agreement. Appellees refused to pay or to furnish an accounting. Extensive and protracted litigation followed. The earlier phases of the litigation determined appellant was entitled to an accounting and to receive five percent of any resulting net profit and are not involved on this appeal.
The final judgment computed appellant's five percent share based on a net profit of $320,834, but that judgment gives us no clue as to how the judge arrived at this figure.[2] As well as we can determine, after a thorough review of the record and the briefs, the following items were deducted from $1,008,137 gross profits:

 1. Advances from other projects $ 101,629
 2. Loan 39,000
 3. Bank account 6,605
 4. Loan 53,440
 5. Interest on item # 4 34,201
 6. Architect and contractor fees 101,947
 7. Interest on item # 6 23,866
 8. Management fees 152,535
 9. Interest on item # 8 41,892
 10. Interest on $115,676 borrowed
 for taxes 46,616
 11. Interest on $217,629 other
 advances 85,572
 _________
 Total deductions $ 687,303

Appellant does not challenge items 2 and 3 on this appeal. He argues that the other deductions were improper.
Over objection by appellant, appellee was permitted to introduce into evidence a "computation of profit on sale" in support of its claim that all of the above deductions (and others) were proper. These records were prepared by appellee's accountant in 1980 in anticipation of trial to summarize a transaction which occurred in 1974. We agree with appellant that these "supplemental records" do not qualify as business records and should have been excluded. § 90.803(6)(a), Fla. Stat. (1981). They were not prepared at or near the time of the sale and were prepared in anticipation of trial to support appellee's position. Cf. National Car Rental Systems, Inc. v. Holland, 269 So.2d 407 (Fla. 4th DCA 1972).
To the extent that the above deductions were not reflected in any way in the business records or accounts of the partnership kept in the normal course of its operation or prepared in connection with or immediately following the sale, the question becomes whether such items are nevertheless adequately identified or fairly embraced in some provision of the letter agreement of the parties. Appellant cites no authority, and we find no merit in his contention that each item must not only be covered by some provision of the contract but also be contemporaneously entered or otherwise appropriately reflected in the books, records, and accounts of the partnership. If the agreement of the parties does not identify a deduction, it must be reflected in the business records of the business. However, we see no reason why agreed upon deductions should not be permitted, even if no books or business records at all are kept or maintained. Quite obviously appellant accepts the proposition  as we think he must  that the written agreement does not restrict the deductions to those specified therein  e.g., recording fees, documentary stamps, and other expenses of the sale were not specified. In the absence of some appropriate words of limitation in the agreement, the costs, expenses, and obligations *236 incurred in the normal course of the operation and sale as established by competent evidence would be proper deductions. Apparently, some such deductions were, in fact, allowed in arriving at the gross profit figure.
Appellees argue that the following provisions of the letter agreements are broad enough to cover the items listed above:
After the [appellees] pay the following debts they owe to the following described companies or persons: Bernard Greenbaum & Associates, Inc. to the "300 Building" in the amount of $53,440.00; a loan to the "300 Building" by Bernard and Florence Greenbaum in the amount of $39,000.00; ... .
In addition to the above, there is the accrued interest to date plus any future advances that have to be made to meet the constant deficits we have had from time to time and expect in the future in interest, taxes, administrative, construction, improvement, and other operational costs.
* * * * * *
There may be other future loans or borrowings and other advances that may have to be made from time to time to carry, operate, construct, lease and develop various aspects of the Complex.
In the event we sell the Complex, any amount in excess of said ... obligations ... plus any future borrowings or advances to carry or operate the property as aforesaid we shall share with you the excess over and above said obligations and ... future loans, your profit sharing to be 5% of the net amount received after discharging all of the obligations ... present and future, as aforesaid. .. .
Once appellant's right to the accounting and the five percent of net profits was determined, the appellees had the burden of establishing each credit or deduction by competent and substantial evidence. See Smith v. American Motor Inns of Florida, Inc., 538 F.2d 1090 (5th Cir.1976). In this case, such credits must either be found in the business records and accounts of the appellees  the parties required to render the accounting  or sufficiently identified in the agreement of the parties.
We now turn to the specific contested deductions, beginning with item 1, "advances from other projects." The office building complex in this case is but one of several projects promoted, owned, and operated by appellees. The business records established an operational deficit of $101,629 at the time of its sale as to this specific complex but did not contain a note or other entry or identification of where the funds to cover the deficit were secured or when such advances were made. This deficit does appear as an offset to the profits from the other projects of appellees as evidenced by their partnership records and tax returns. This adequately evidences and documents that the advances were from appellees.
The loan in item 4 was specifically identified in the agreement as a debt to be paid before arriving at a net profit figure on the sale. Therefore, it need not be also recorded in the books and records of the complex. It is properly deductible even though no evidence other than the agreement was introduced substantiating its existence. The agreement was silent as to whether interest was to be paid on this loan. In keeping with "the general rule ... that a party is entitled to interest on an amount which he lends to another ...," we cannot say that the deduction of interest was improperly allowed by the trial judge, there being no indication of any agreement to the contrary. See generally 47 C.J.S. Interest and Usury § 12; 32 Fla.Jur.2d Interest and Usury § 2. However, the law will only imply a contract for the payment of interest at the legal rate, which in this case was six percent per annum. § 687.01, Fla. Stat. (1965).[3] The trial court incorrectly allowed interest calculated at eight percent per annum.
*237 Item 6, "architect and contractor fees," and item 8, "management fees" are not noted or carried or otherwise entered in any of the appellees' business records. Appellees testified that the individual partners acted as architect and contractor and performed management services in connection with the office building complex. Absent a specific agreement to the contrary, a partner does not receive separate remuneration for services performed for the partnership. § 620.645(6), Fla. Stat. (1981). The references in the letter agreement to "future loans or borrowings ... to ... operate, construct, lease, and develop" the project is insufficient to justify deductions for services performed by individual partners. It follows that items 7 and 9 are also improper.
Appellant agreed to the deduction of a loan of $115,676 by Bernard Greenbaum & Associates, Inc., to the partnership for payment of taxes and interest, but he objects to an allowance of interest on this loan, listed as item 10. For the reasons previously stated in reference to item 5, we do not fault the trial judge for allowing the deduction of interest. However, it must be recalculated at the legal rate in effect at the time.
This brings us to item 11, which is puzzling. The trial court did not allow a deduction for the entire $217,629 "other advances" listed in appellees' "supplemental records." Item 1 $101,629 is all the "advances" allowed and we assume it is a part of this $217,629 figure. As stated in our discussion of item 1, the $101,629 represents a transfer on the books of the partnership; in essence, a loan by the partnership to itself. While we held the partnership returns and records were adequate to establish that appellees actually made the advances, there is nothing to establish that such advances were made before the date the complex was sold. Appellees' argument that the letter agreement allows it to charge interest on such a loan to itself is unconvincing, particularly when they establish no date interest should commence to run. Interest on the remainder of the $217,629 is obviously not a proper deduction when that remainder itself was not allowed as a deduction by the trial court. Consequently, we conclude appellees did not carry their burden of proving up any entitlement to interest on any part of the "advances from other projects."
In summation, we reverse the final judgment insofar as it allowed items 6, 7, 8, 9, and 11 to be deducted in arriving at a net profit on which to calculate appellant's five percent. Those deductions were not supported either by the books and records of the appellees or by the agreement of the parties. Item 5 and item 10 must be recalculated based on an interest rate of six percent per annum  the legal rate in effect up to the date of sale of the project.
As his final point on appeal, appellant argues he is entitled to an award of prejudgment interest. We agree that because this is an action based upon a breach of contract an award of prejudgment interest at the legal rate is proper. See Parker v. Brinson Construction Co., 78 So.2d 873, 874 (Fla. 1975). We find this case analogous to Peter Marich & Associates, Inc. v. Powell, 365 So.2d 754 (Fla. 2d DCA 1978). There, appellant agreed to perform architectual services for a fee based in part on a percentage of the construction costs. This court held that "[t]hough there was a bona fide question as to how much appellant was owed under the contract, once this issue was determined by the court appellant was due interest from the date of entitlement." 356 So.2d at 756. Here, appellant's five percent share of the net profits was due immediately upon sale of the building. The fact that there was a legitimate dispute concerning certain deductions from the gross profit did not render the amount unliquidated. Cf. Tech Corp. v. Permutit Co., 321 So.2d 562 (Fla. 4th DCA 1975).
This case is REMANDED for entry of judgment consistent with this opinion.
SCHOONOVER and LEHAN, JJ., concur.
NOTES
[1] The "gross profit" of $1,008,137 is not explained or questioned on this appeal. It is, therefore, accepted as correct and presumably is that reflected by the books and records of the partnership and the sale and those deductions appellant agreed to.
[2] We encourage the practice of setting out the method of computation in any dispute involving mathematical calculations.
[3] The legal rate of six percent remained in effect during the entire period of the loan. Chapter 82-42, section 1, Laws of Florida, raised the legal rate of interest to twelve percent, effective July 1, 1982.