753 So.2d 121 (2000)
James R. McELROY, as Personal Representative for the Estate of Mable E. Christensen, deceased, Appellant/Cross-Appellee,
v.
Gaylord C. PERRY, Appellee/Cross-Appellant.
No. 98-03049.
District Court of Appeal of Florida, Second District.
January 5, 2000.
Rehearing Denied March 15, 2000.
*122 Bonita K. Brown of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellant/Cross-Appellee.
Mary Van Leuven of Brown, Ward, Van-Leuvan & Salzman, P.A., Orlando, and Patricia A. Doherty of Wooten, Honeywell & Kest, P.A., Orlando, co-counsel for Appellee/Cross-Appellant.
FULMER, Judge.
James R. McElroy, as personal representative for the Estate of Mable C. Christensen, appeals a judgment entered following a jury verdict awarding $63,700 to Gaylord C. Perry for injuries incurred in an automobile collision with Christensen. We reverse for a new trial on damages because the trial court erred in directing a verdict for Perry on the issue of permanency where there was a genuine dispute and jury question regarding whether Perry suffered a permanent injury as a result of the automobile accident.
In November 1994, Perry's vehicle was hit on the driver's side by Christensen's vehicle. Perry hit her head on the side window and her elbow collided with the armrest. The door to her vehicle was pushed in, the armrest was broken, and the window was derailed. At the conclusion of the accident investigation, Perry and Christensen drove their own vehicles away from the scene of the collision. Later in the day, Perry went to the emergency room because she had persistent pain in her head and neck. She was treated with Tylenol and ice. Approximately one week later, she began treatment with a chiropractor because she was still experiencing pain which, according to Perry's testimony, now included her elbow and shoulder. Perry continued treatment with the chiropractor who also referred her to two other doctors, one of whom referred her to a third doctor. All of the medical doctors recommended that she have cortisone treatment. Perry testified that she declined the cortisone because she had had an allergic reaction to it long ago. In the medical history Perry gave to the doctors, *123 however, she reported no allergy to cortisone. The defense presented other inconsistencies in or impeachment of the medical history Perry provided to the doctors.
The records of Perry's treating chiropractor indicated that in June 1995, Perry lifted a heavy box and strained her neck and shoulder. In 1997 Perry began to work with her husband in his lawn maintenance business where she used a mower, blower, and other lawn equipment. She testified that she works fourteen hours per week doing lawn maintenance and cannot sleep by the end of the week because of the pain. Perry previously worked in the insurance business for almost twenty years.
Three medical experts testified on Perry's behalf that she sustained permanent injuries as a result of the automobile accident. McElroy introduced into evidence the written reports of two medical experts. One of the experts, Dr. Phillips, performed a medical examination of Perry at the request of Perry's personal injury protection (PIP) carrier pursuant to section 627.736(7), Florida Statutes (1995). Dr. Phillips concluded in his report that: Perry had not sustained any disability; she was probably capable of full-time sedentary work; and, if his recommendations were followed, he anticipated an increase in her physical capacity to her pre-accident status. Dr. Phillips did not testify at trial, and as explained below, the trial court erred by admitting his report. The other report was prepared by Dr. McCraney, a neurologist hired by the defense to perform an independent medical examination of Perry. Dr. McCraney testified at trial and was asked, "Based on the information that you have gathered in this case, are you able, within a reasonable degree of medical probability attributing [sic] any permanent injury to this patient as a result of a reported motor vehicle accident?" He responded, "Permanent? No." On cross-examination he was asked: "And in fact, your opinion when you gave your deposition regarding permanent injury with Ms. Perry, is you have no opinion as to whether or not she sustained a permanent injury. You can't rule it in or rule it out, and especially to the ulnar nerve, is that correct?" He responded, "That's correct."
Prior to trial, a partial summary judgment was entered in favor of Perry as to the negligence of Christensen. During trial, at the close of all the evidence, the trial court granted Perry a directed verdict as to permanency of injuries, but not as to causation. In so doing, the trial court stated, "there is no dispute, she has injuries that are permanent. The question is whether they were caused by the car accident." The court acknowledged that Perry's symptomatology seemed to be related more to median nerve rather than ulnar nerve damage, and that there was expert testimony that the type of labor in which she is currently engaged "causes exactly that type of injury."
The trial court instructed the jury that Christensen was negligent and that Perry's injuries were permanent. The verdict form asked the jury, "Was the negligence on the part of MABLE E. CHRISTENSEN, deceased, a legal cause of damages to Plaintiff, GAYLORD C. PERRY?" The jury answered "YES" and awarded $37,700 for future medical expenses and lost earnings, $13,000 for past pain and suffering, and $13,000 for future pain and suffering, for a total award to Perry of $63,700. The jury awarded no damages for past medical expenses or lost earnings.
On appeal, McElroy argues that: (1) the trial court erred in directing a verdict and instructing the jury that Perry's injuries were permanent; (2) the error was compounded by a jury instruction on intervening cause, which could have led the jury to believe that even if Perry's physical problems were caused by her voluntary choice to engage in the lawn maintenance business, she was nevertheless entitled to recover; and (3) the court erred in failing to instruct the jury to reduce any award of future medical expenses or lost wages by *124 the amount of the remaining no-fault PIP benefits. Perry has cross-appealed on an evidentiary issue concerning the admissibility of compulsory medical examination reports under the business record exception to the hearsay rule.
We first consider the issue that we find dispositive, the directed verdict on permanency of injury. A directed verdict is proper when the evidence and all inferences therefrom, considered in the light most favorable to the nonmoving party, support the movant's case as a matter of law and there is no evidence to rebut it. See Memorial Park, Inc. v. Spinelli, 342 So.2d 829, 832 (Fla. 2d DCA 1977).
While "[p]ermanency determinations are generally made by juries," a directed verdict on permanency is proper where the evidence of injury and causation is such that no reasonable inference could support a jury verdict for the defendant. Evans v. Montenegro, 728 So.2d 270, 271 (Fla. 3d DCA 1999). A plaintiff establishes a prima facie case of permanency by presenting expert testimony of permanency. The burden then shifts to the defendant to defeat the directed verdict by presenting countervailing expert testimony, severely impeaching the plaintiff's expert, or presenting other evidence which creates a direct conflict with the plaintiffs evidence. See id. (citing Holmes v. State Farm Mut. Auto. Ins. Co., 624 So.2d 824 (Fla. 2d DCA 1993), and Jarrell v. Churm, 611 So.2d 69 (Fla. 4th DCA 1992)).
Here, Perry established a prima facie case by presenting expert testimony as to permanent injury. McElroy, however, presented countervailing expert testimony. Testifying for the defense, Dr. McCraney opined that Perry had not sustained permanent injury as a result of the automobile accident. Further, Dr. McCraney's testimony provided a basis from which the jury could have concluded that Perry had not reported accurately her medical history. See Easkold v. Rhodes, 614 So.2d 495, 497-98 (Fla.1993) (where there is contradictory evidence from which the jury could conclude that the plaintiff did not accurately report medical history, jury is free to disregard plaintiff's expert testimony). Most damaging to Perry in this regard was Dr. McCraney's testimony that Perry's story did not "hang together very well." In his opinion, there was some evidence of symptom magnification. He noted that although objective tests showed problems with the nerve in her elbow, Perry's complaints were not compatible with that injury. He commented that Perry's new occupation in the lawn care business could cause nerve injury and explain her current status. As to Perry's complaint of headaches, Dr. McCraney attributed this to a syndrome known as analgesic headache, meaning a headache that arises from taking too many painkillers. When he examined Perry for muscle strength in her left arm and hand, he found "give-away weakness," which refers to poor effort. He noted that she had no atrophy or muscle wasting in her arm, and that a report of Dr. Shea in 1996 showed normal strength in all of the muscles in her left arm and hand. From this inconsistency, Dr. McCraney concluded, "It's apparent that she's exaggerating the extent of her difficulties."
Perry argues that Dr. McCraney's testimony does not constitute an opinion that Perry suffered no permanent injury as a result of the accident and, therefore, does not countervail her experts' opinions. McElroy argues that Dr. McCraney's testimony should be construed to mean that although he has no opinion as to whether Perry currently has a permanent injury, it is his opinion that the 1994 accident caused no permanent injuries. When read in context with his entire testimony, we tend to agree with McElroy's interpretation. Nevertheless, even if Dr. McCraney's opinion does not refute Perry's experts' opinions as to whether she currently has a permanent injury, the directed verdict was error. Once the court instructed the jury that Perry's injuries were permanent, a *125 "yes" answer to the causation question automatically incorporated a conclusion that Christensen's negligence was the legal cause of the permanent injuries. Thus, the jury was deprived of the opportunity to consider the evidentiary question of whether the permanency of any injuries Perry currently suffers is attributable to the automobile accident or to her own employment choice. As the trial court recognized at the time it entered the directed verdict, there was evidence from which a jury could conclude that the permanency of Perry's injuries were caused by her own actions and not the negligence of Christensen.
Under the circumstances, it was error to direct a verdict on permanency. Therefore, we reverse and remand for a new trial on damages. We address the remaining issues on appeal because they may recur at the second trial.
We consider the issue on cross-appeal next because its resolution impacts the issue concerning the intervening cause instruction. Perry challenges the trial court's ruling that the compulsory medical examination reports of Drs. McCraney and Phillips were admissible under the business record exception to the hearsay rule contained in section 90.803(6), Florida Statutes (1997).[1] In response to Perry's argument that the IME reports lacked trustworthiness, counsel for McElroy argued:
I guess that she's trying to argue that the two doctors are liars.... After the inception of the evidence code, the distinction between those two types of records [of a treating and examining physician] was abolished and they have the inherent trustworthiness by virtue of the fact that there is a presumptiveness that a patient would provide accurate information to the physician.
We do not agree that a challenge to the trustworthiness of the reports constitutes a challenge to the personal veracity of the individual doctors. The trustworthiness evaluation addresses the circumstances under which the medical examinations were performed. Neither Dr. McCraney nor Dr. Phillips was a treating physician, and while they did examine Perry, they did not do so in the typical doctor/patient circumstance. Their reports are more properly characterized as forensic or advocacy reports. Thus, even if they fall within the literal definition of a business record, they also fall within the provision of the rule that excludes those records in which "the sources of information or other circumstances show lack of trustworthiness." In discussing this hearsay exception, Professor Ehrhardt points out that when a record is made for the purpose of litigation, its trustworthiness is suspect and should be closely scrutinized, and that most of the time, the report of an expert made for the purpose of litigation is not admissible under section 90.803(6). See Charles W. Ehrhardt, Florida Evidence § 803.6 at 695 (1999 ed.). Thus, a *126 trial court may exclude evidence meeting the literal requirements of the business record exception where the underlying circumstances indicate the lack of trustworthiness that is presumed to exist with most business records.
In this case, Dr. McCraney was hired by the defense to perform an independent medical examination (IME) of Perry solely for the purpose of litigation. Thus, his report falls squarely within the suspect category. However, Dr. McCraney testified at trial and was available for voir dire examination of his credentials as well as cross-examination of the facts and data underlying his opinions. Had he not testified, the lack of opportunity for voir dire and cross-examination together with the fact that the report was prepared solely for litigation would, without question, render the admission of his report an abuse of discretion.[2] We do not suggest that if an expert testifies, his written report, which is hearsay, becomes admissible. In fact, the in-court testimony renders the report cumulative, which is another basis for exclusion. Moreover, the error is compounded because once admitted into evidence, the jury takes the expert's written opinion into the jury room for further review during deliberations, while the jury must recall from memory the opinions of the opposing experts.
We have found no Florida cases expressly addressing the admissibility of an IME report as a business record. The Michigan Court of Appeals, however, considered this issue in People v. Huyser, 221 Mich.App. 293, 561 N.W.2d 481 (1997), and concluded that the trial court erred by allowing the State to utilize, in its prosecution, a report of the doctor it hired to examine the victim of a sex crime. Because the report was prepared for the purpose of litigation, the court believed it lacked the trustworthiness of a record generated exclusively for business purposes. More recently, the Supreme Judicial Court of Maine reached the same conclusion. See State v. Tomah, 736 A.2d 1047 (Me. 1999) (forensic expert reports are the antitheses of the business records addressed by the Maine version of Rule 803(6) and the fact that they are prepared in anticipation of litigation is a common reason for finding that they lack trustworthiness). We agree with this view and conclude that an IME report prepared for the purpose of litigation lacks the trustworthiness that business records are presumed to have, and therefore, is not admissible under the business records exception.
Dr. Phillips' report must be examined separately because it was not prepared solely for the purpose of litigation. Nevertheless, we conclude that it too falls within the category of those records in which "the sources of information or other circumstances show lack of trustworthiness." Dr. Phillips was hired by Perry's insurance carrier to examine her for the purpose of assisting the carrier in its determination of whether the treatment Perry was obtaining was "reasonable, related, or necessary" pursuant to section 627.736(7). Thus, the carrier's motivation for requesting the examination was a financial one that placed the physician in much the same adversarial posture in relation to the insured as that of a physician hired by an opposing party to perform an IME for the purpose of litigation. All of *127 the trustworthiness issues that pertain to Dr. McCraney's IME report apply equally to Dr. Phillips' PIP report. Therefore, we also conclude that it was an abuse of discretion to admit the report of Dr. Phillips as a business record.[3]
Turning to the question of the intervening cause instruction, we agree with the trial court that the opinions in Dr. Phillips' report support the instruction. However, as we have already explained, it was error to admit Dr. Phillips' report into evidence. On retrial, if Dr. Phillips testifies in court to the same opinions set forth his report, that testimony would provide a proper basis for the intervening cause instruction.
Finally, McElroy argues that the trial court erred in failing to instruct the jury to reduce any award of future medical expenses or lost wages by the amount of the remaining no-fault benefits. Perry concedes that this issue is governed by the recent supreme court decision of Rollins v. Pizzarelli, 24 Fla. L. Weekly S69 (Fla. Feb. 4, 1999). Consequently, should this issue arise in subsequent proceedings, the damage award should be reduced by the remaining unpaid PIP benefits.
We reverse the final judgment and remand for a new trial on damages.
CAMPBELL, A.C.J., and SALCINES, J., Concur.
NOTES
[1] Section 90.803 provides in relevant part:

The provision of § 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness....
(6) Records of Regularly Conducted Business Activity.
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
(b) No evidence in the form of an opinion or diagnosis is admissible under paragraph (a) unless such opinion or diagnosis would be admissable under §§ 90.701-90.705 if the person whose opinion is recorded were to testify to the opinion directly.
[2] Addressing Federal Rule of Evidence 803(6), which is identical to section 90.803(6), Florida Statutes, McCormick on Evidence states that the specific "inclusion of opinions or diagnoses within the [business record exception] rule only removes the bar of hearsay. In the absence of the availability of the expert for explanation and cross-examination, the court may conclude that probative value of this evidence is outweighed by the danger that the jury will be misled or confused. This concern is particularly significant if the opinion involves difficult matters of interpretation and a central dispute in the case, such as causation." McCormick on Evidence § 293, at 445 (John W. Strong ed., 5th ed.1999)(footnote omitted).
[3] Because we reverse on other grounds, we do not need to engage in a harmless error analysis to decide whether the admission of Drs. McCraney and Phillips' reports would otherwise require reversal.