836 So.2d 1129 (2003)
Kristen and Donald BRADLEY, as Parents, Natural Guardians and Next Friends of their daughter, Kelly Bradley, a minor child, Appellants,
v.
Michelle BROTMAN, Appellee.
No. 4D00-4236.
District Court of Appeal of Florida, Fourth District.
February 19, 2003.
*1130 John H. Pelzer and Fabienne Leconte of Ruden, McClosky, Smith, Schuster & Russell, P.A., and Jon E. Krupnick of Krupnick, Campbell, Malone, Roselli, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., Fort Lauderdale, for appellants.
Vanessa A. Reynolds of Conrad & Scherer, LLP, Fort Lauderdale, for appellee.

ON MOTIONS FOR REHEARING
WARNER, J.
The motions for rehearing are hereby denied. We withdraw our previously issued opinion and substitute the following in its place.
*1131 We confront in this case the necessity to reverse a final judgment due to defense counsel's misconduct in the admission of evidence at trial. The trial court refused to grant plaintiff's request to exclude the evidence because plaintiff's counsel stipulated to the admission of the medical records in question. We conclude that there was no meeting of the minds as to a specific portion of the medical records, and the records should have been redacted to remove that portion regarding the doctor's opinion based upon surprise and prejudice. The trial court's refusal to redact this portion of the record was an abuse of discretion, requiring reversal for a new trial.
There are actually two different incidents involving attorney misconduct in this case. One does not require reversal. However, we detail both because at one point in the progress of this case the facts intersect.
In September 1996, Kelly Bradley, who was two years old at the time, was bitten on the lip by a dog belonging to appellee Brotman. Some weeks later her parents noticed her hair falling out. Through consultations and treatment with a number of physicians, she was diagnosed with alopecia areata, a skin disease resulting in hair loss on the scalp. Her parents ultimately filed suit against Brotman, and whether the dog bite and consequent stress could have caused or aggravated the alopecia became the main issue.
Bradley's counsel, Jon Krupnick, listed several doctors in his expert witness list for trial, including Dr. Bernhardt. Defense counsel, Reid Cocalis, moved to limit the list, and the trial court ordered the list reduced. Krupnick's amended list included only three physicians to testify on causation. Dr. Bernhardt was not on the list. When a subsequent settlement offer from Krupnick indicated that Dr. Bernhardt would have evidence to support the claim, Cocalis sought to speak to the doctor, whom he had not deposed. On May 23, 2000, just a few days before trial, Cocalis called Dr. Bernhardt without notice to Krupnick. Cocalis reminded the doctor that he had treated him in the past. He then told the doctor that he represented Brotman in this case. Cocalis asked the doctor, "off the record," if he was intending to testify regarding causation and the substance of that testimony. When Dr. Bernhardt told Cocalis to discuss the matter with Krupnick, Cocalis replied that he could not trust him. The doctor ended the call quickly and immediately called Krupnick.
Krupnick filed a motion to strike Brotman's pleadings as a result of the contact with Dr. Bernhardt, alleging that the conversation violated section 455.667(5), Florida Statutes (1999), which prevents any ex parte communication with a physician regarding a patient's condition. Because Bernhardt was a crucial witness and now would not testify, Krupnick argued a sanction should be imposed.
Brotman argued that regardless of Cocalis' conversations with Dr. Bernhardt, the doctor was not listed on the reduced expert list, and could not testify. Allowing him to do so at this late date would prejudice the defense. The court authorized Kelly Bradley's guardian ad litem to investigate the issue. After speaking with Dr. Bernhardt, the guardian reported that the contact was willful and that the doctor's trial testimony was tainted. At a second hearing on the day of trial, the court ultimately denied Krupnick's motion to strike the pleadings.
At the same time the incident with Dr. Bernhardt was being resolved, Cocalis issued two subpoenas duces tecum for trial on May 23 and 25 to the medical records custodians with Drs. Unis' and Bernhardt's offices and to Dr. Unis personally, for all documents relating to Kelly's treatment. *1132 Krupnick did not receive notice that these trial subpoenas were issued. Contrary to the directives of the subpoena, which requested the presence of a records custodian at trial, Dr. Unis sent his medical records to Cocalis' office. Cocalis did not notify Krupnick upon receiving these records. At trial on May 30, when arguing about the Bernhardt contact, Krupnick asked Cocalis whether he had any other ex parte contacts with plaintiff's experts. Cocalis stated that the only contact was the subpoena for the records custodian, "where the records custodian has called my office." When Krupnick asked who was contacted, Cocalis' co-counsel stated she contacted Dr. Bernhardt's office. Cocalis did not mention the subpoena which he had issued for Dr. Unis' records.
Dr. Unis, a dermatologist, examined Kelly only once in 1996 and diagnosed the alopecia areata. He explained the condition to the Bradleys and suggested that they get a second opinion. In 1999, his deposition was taken, and his notes of this one visit were attached to the deposition. Shortly before trial in 2000, Krupnick called him regarding Kelly's condition. Dr. Unis noted this conversation in Kelly's medical record on May 11, 2000 (six months after the deposition). This note stated, "I advised him that I did not think that the patient's persistent problem with alopecia areata at this point would be due to stress from a prior dog bite." A second notation indicated that he sent his records to Cocalis on May 24, 2000. Krupnick did not receive these amended medical notes.
At trial, after an abundance of medical testimony from each side, Krupnick read Dr. Unis' deposition to the jury. During his deposition, Dr. Unis testified that because medical studies had cited stress as a possible cause or aggravating factor of alopecia areata, he would not be surprised if a study linking alopecia areata with dog bites existed. However, he did not formulate an opinion regarding the cause of Kelly's condition. At his deposition, Dr. Unis identified his medical records, and they were introduced as defendant's Exhibit 1. When Cocalis attempted to call Dr. Unis' records custodian at trial, Krupnick announced he would stipulate to their admission because Dr. Unis' deposition had just been read. What Cocalis presented to the clerk for admission were not the records attached to the deposition but rather the records sent to his office, which included the note regarding the telephone conversation with Krupnick, of which Krupnick was unaware.
At the close of all the evidence, Krupnick reviewed the evidence that had been admitted and discovered the additional note regarding the telephone conversation in Dr. Unis' records. Krupnick renewed his motion for sanctions and to strike the pleadings, both of which were denied. He also moved to have the note removed from the record on the grounds of fairness, the lack of opportunity to subject it to cross-examination, and that it had no probative value. The court denied the motion because Krupnick had stipulated to the entry of the document. Before Cocalis began his closing argument, Krupnick again argued that Dr. Unis' medical records were obtained in violation of section 455.667(5), his opinion was not based upon a medical probability, and Cocalis fraudulently entered the notes into the record. Cocalis responded that Krupnick was at fault for not reviewing the documents before stipulating to their entry into evidence. Krupnick noted that his stipulation was to the medical records introduced during Dr. Unis' deposition, which did not include the telephone note. The court refused to redact the record.
During Cocalis' closing arguments, he showed the jury a poster-board-size version of Dr. Unis' medical note on the telephone *1133 conversation with Krupnick. Cocalis highlighted that Dr. Unis was Kelly's only physician that Krupnick did not call to present his opinion because Dr. Unis did not think Kelly's condition was related to the stress from the dog bite.
The jury awarded Bradley her past medical expenses but did not award any future damages. Krupnick filed a post-verdict motion to strike Brotman's pleadings and a motion for new trial based upon the ex parte contact with the doctors. The court denied the motion and Bradley filed this appeal.
We will address the issues in reverse order as we conclude that the failure to exclude the telephone note on the medical records of Dr. Unis is reversible error. As to the contact with Dr. Bernhardt, while it was unlawful and unprofessional, the denial of sanctions on this issue was not an abuse of discretion.
Section 455.667(5) (renumbered as section 456.057(5)), provides that a patient's medical records,
[M]ay not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient.
The statute allows for medical records to be furnished without the patient's written authorization under certain circumstances, including upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records. In Acosta v. Richter, 671 So.2d 149, 154-55 (Fla.1996), the supreme court noted that this section created a "broad and express privilege of confidentiality as to the medical records and the medical condition of a patient" and "an explicit scheme ... to strictly control the dissemination of a Florida patient's medical information." Under this statute, the production of Kelly's medical records could be compelled only through a subpoena with proper notice to the Bradleys or Krupnick, as Kelly's legal representative. Admittedly, Cocalis did not notify Krupnick of the subpoena and violated the statute. Professional conduct would have also required him to provide copies of the amended medical records to Krupnick once he received them. What makes the statutory violation more egregious is that Cocalis failed to reveal the subpoena and the receipt of Dr. Unis' medical records when Krupnick asked Cocalis in court whether he had any other contact with Kelly Bradley's physicians.
Because Krupnick discovered Dr. Unis' telephone note that opined the dog bite did not cause the alopecia before that evidence was revealed to the jurors, it could have been excised without any prejudice to either side. The court's refusal to redact the note from the record was an abuse of its discretion.[1]
While Brotman argues that Krupnick is bound by his stipulation to the admission of the medical records, it is apparent to us from the record that Krupnick was stipulating only to those medical records that Dr. Unis identified at his deposition. Krupnick did not know, and had no reason to know, that the doctor had *1134 added a note to the medical records after his telephone call.
In McGoey v. State, 736 So.2d 31, 33-34 n. 2 (Fla. 3d DCA 1999), the state and defense agreed not to admit McGoey's pretrial statements into evidence. At trial, the state sought to introduce other statements made by McGoey. When the defense objected, the state maintained that it stipulated to exclude only certain statements. See id. at 34. The trial court agreed with the state and admitted some of McGoey's statements. See id. On appeal, the court determined that "[i]t is clear to us ... that there was no meeting of the minds between the parties as to the nature or scope of this purported pretrial stipulation." Id. The court discussed the nature of a stipulation in court:
A stipulation is an agreement, admission, or concession made in a judicial proceeding. The essence of a stipulation, however, is an agreement between the parties. However,
(1) There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and
(a) neither party knows or has reason to know the meaning attached by the other; ...
Thus, a "meeting of the minds" by the parties is essential to a stipulation.
Id. (citations omitted) (quoting Restatement (Second) of Contracts § 20 (1979)). The court further determined that "[t]o avoid the consequences of a stipulation properly entered into, a party must show that the agreement is the product of a fraud, misrepresentation or mistake of fact." Id. at 35 (emphasis added). The third district ultimately determined that there was confusion and no meeting of the minds as to the stipulation regarding the pretrial statements and reversed the conviction for a new trial.
Similarly, from the record in this case it is apparent that there was no "meeting of the minds" as to the admission of Dr. Unis' medical records. The parties attached materially different meanings to the stipulation when admitting the medical records into evidence. Krupnick intended to stipulate to the admission of the records attached to the deposition, and Cocalis was attempting to admit the amended medical notes containing the telephone conversation. It was not necessary for the court to conduct a hearing on whether any fraud was involved. It was clear from the face of the record that there was no meeting of the minds and that a mistake of fact had occurred, from which Krupnick should have been relieved.
Even if we were to call this a unilateral mistake on Krupnick's part to have stipulated to the admission of a record he did not actually review, Bradley would still be entitled to relief. It does not comport with fundamental fairness for an attorney to mislead his opponent and then reap the benefit of his own misconduct. Rules Regulating the Florida Bar 4-3.4(a) provides that "[a] lawyer shall not ... unlawfully obstruct another party's access to evidence or otherwise ... conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending ... proceeding...." Id. (emphasis added). Here, Cocalis subpoened the medical records without notice in violation of section 455.667(5), failed to notify Krupnick of its receipt, and concealed its receipt from Krupnick when asked directly in court whether other witnesses had been contacted.
The prejudice to Bradley in the admission of the note is apparent. While in deposition Dr. Unis was unsure of the cause of the alopecia, in the telephone note he expressed an opinion that the dog bite could not have been the cause of the condition. *1135 Had Krupnick known of the note, he could have called Dr. Unis to explore his opinion and dissipate any prejudice. As it occurred at the very end of the trial, Krupnick had no opportunity to cure the prejudice. Thus, Bradley suffered the type of procedural prejudice referred to in Binger v. King Pest Control, 401 So.2d 1310, 1314 (Fla.1981), from which the court should have granted relief.
Moreover, the note may have been inadmissible as a business record on the grounds that it was "untrustworthy" because the opinion was given without having conducted another examination of Kelly or having followed her progress. See generally Beckerman v. Greenbaum, 439 So.2d 233, 235 (Fla. 2d DCA 1983) (holding a supplemental record was inadmissible where it was made in 1980 to summarize a 1974 transaction and was prepared in anticipation of trial not as part of business activity).
Even if the medical record satisfied the business record exception, the opinion still may be excluded if it is unfairly prejudicial or confusing under section 90.403, Florida Statutes. This prejudice or confusion is more likely to occur in a case where the expert does not testify at trial and is not subject to cross-examination. See Love v. Garcia, 634 So.2d 158, 160 (Fla.1994); accord McElroy v. Perry, 753 So.2d 121, 125-26 (Fla. 2d DCA 2000); Phillips v. Ficarra, 618 So.2d 312, 313-14 (Fla. 4th DCA 1993); see generally Lazorick v. Brown, 195 N.J.Super. 444, 480 A.2d 223, 226 (App.Div.1984) (noting that despite the business records exception to the hearsay rule, the record may be excluded as substantive proof if the opinions therein relate to the diagnosis of a complex medical condition difficult to determine or substantiate and the expert is unavailable for cross-examination). See also CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 803.6 (2001 ed.).
Section 90.403 allows the trial court to exercise its discretion to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." McCormick on Evidence notes that opinions and diagnoses contained in medical records may be excluded from admission under the similar Federal Rule of Evidence 403. McCormick states that the,
[A]dmissibility of all such [opinions and diagnoses] is not assured. First, where indications of lack of trustworthiness are shown, which may result from a lack of expert qualifications or from a lack of factual support, exclusion is warranted. Moreover, inclusion of opinions or diagnoses within the rule only removes the bar of hearsay. In the absence of the availability of the expert for explanation and cross-examination, the court may conclude that probative value of this evidence is outweighed by the danger that the jury will be misled or confused. This concern is particularly significant if the opinion involves difficult matters for interpretation and a central dispute in the case, such as causation.
JOHN W. STRONG, MCCORMICK ON EVIDENCE § 293 (5th ed.1999) (footnotes omitted) (emphasis added).
The second district recognized this limitation on an otherwise admissible business record in Perry. See 753 So.2d at 126. In that case, the court held the trial court abused its discretion in admitting the report of an independent medical examination because the report was prepared solely for litigation purposes, and thus, lacked trustworthiness. See id. at 127. However, the court also noted that, if the physician had not testified and not been subjected to voir dire and cross-examination, then that "would, without question, render the admission" an abuse of discretion. Id. at 126 (emphasis added).
*1136 In this case, the court could have easily prevented the prejudice and cured any potential error by excising the reference to the telephone note in the record. That is what Krupnick repeatedly asked the court to do. The jury had not seen the notes. Therefore, the jury's mind was not as yet "tainted" by this evidence. We conclude for all of these reasons that the court abused its discretion when it failed to redact Dr. Unis' medical records to remove the telephone note.
As to the contact with Dr. Bernhardt, this too violated section 455.667(5), prohibiting contact with a patient's physician without consent, which appellee candidly admits. This violation may have been more egregious than the violation with Dr. Unis' records because the initial contact was intentional, and Cocalis sought to use his family connection with Dr. Bernhardt to obtain information he was statutorily not entitled to. However, it was not as prejudicial because Dr. Bernhardt had not been listed as a causation witness and because the doctor revealed nothing to Cocalis when he called. Thus, under these circumstances we cannot say that the trial court abused its discretion in failing to strike Brotman's pleadings. However, the trial court may reconsider the motion for sanctions at a new trial if Krupnick calls Bernhardt to testify. Krupnick expressed concern that Bernhardt, Kelly Bradley's long-time treating dermatologist, would now be prejudiced against Kelly after this entire incident. Whether that prejudice exists and whether it would require the striking of pleadings, the removal of Mr. Cocalis from the case, or other monetary sanctions, are issues we leave for further consideration after remand. See Moakley v. Smallwood, 826 So.2d 221, 227 (Fla. 2002).
In sum, we reverse and order a new trial on the basis of the admission of Dr. Unis' medical records, but we condemn the actions of defense counsel as to both the contact with Dr. Bernhardt and the strategic concealment of Dr. Unis' records.
SHAHOOD and HAZOURI, JJ., concur.
NOTES
[1] Because the trial court denied Krupnick's request to redact the record, Krupnick did not need to move for a mistrial to preserve this issue for appeal. See Simpson v. State, 418 So.2d 984, 986 (Fla.1982); accord Baldez v. State, 679 So.2d 825, 826 (Fla. 4th DCA 1996). We also do not construe the trial court's comments during counsel's argument as a suggestion that the court was actually offering a mistrial.