CONNER, J.
Irvin Emmanuel Shorter appeals his conviction and sentence for robbery with a firearm or deadly weapon and aggravated assault with a deadly weapon. On appeal, he raises three issues. We affirm on all three issues, but write to discuss Shorter’s argument that the trial court erred by allowing a detective to testify to Shorter’s attempt to terminate a post-Miranda interview because the testimony infringed on his right to remain silent. We also address the State’s issue on cross-appeal that the trial court erred in admitting a forensic report as a business record and affirm the trial court.[1]

*687
Factual Background and Trial Proceedings

On the night of the incident, the manager of a gas station was working alone. Around 9:15 p.m., the manager, who had his back to the front door, heard someone come into the store and demand, “give me the money.” The manager saw that the man had a gun. He gave the man approximately $160 that was in the register. The man demanded more money, so the manager gave him the cash from a shelf under the register. The man then demanded the manager open the safe, which he did. After grabbing more money, the man fled the scene.
When law enforcement arrived, the manager described the robber’s height, weight, and race, and gave a detailed clothing description. The manager was able to see the man’s eyes, nose, mouth, and chin when the man leaned in close to get the cash after the safe was opened.
When the lead detective returned to the store with a photo lineup, the manager immediately identified Shorter as the robber and said that he was “100% sure.” The detective observed the manager begin to shake and sweat after identifying Shorter’s photograph.
Prior to trial, defense counsel argued two pretrial motions regarding the admissibility of a forensic case report. The State requested analysis of DNA samples found on the MoneyGram keypad at the store, but did not intend to use the report at trial because the analysis did not show that Shorter was a contributor to the DNA found at the scene. The defense wanted the report admitted as defense evidence without calling a witness. The State objected at the pretrial hearings on the basis that the report could not be admitted as a business record and was hearsay without live testimony from the expert conducting the analysis. The trial court ruled that the forensic case report would be admissible.
At trial, when the detective started to describe his interview with Shorter, the defense objected. The defense claimed at sidebar that the detective’s testimony would be commenting on Shorter’s attempt to invoke his right to remain silent. The defense then proffered the detective’s testimony. The detective would testify that Shorter agreed to talk to him after he administered Miranda warnings. He showed Shorter the photo linéup that he had shown the manager. Shorter acknowledged that the manager had circled his picture. The detective next showed Shorter pictures from the surveillance cameras. The detective testified at that point that Shorter stopped making eye contact, put his head down, and sighed. The detective then asked Shorter if the gun in the photos was a real gun or a toy, to which Shorter responded by asking why he should talk if Sheriff Bradshaw could not help him out. Shorter then asked to go back to his cell.
The defense argued that Shorter was attempting to exercise his right to remain silent when he put down his head and sighed. Additionally, the defense argued that Shorter’s question as to why he should talk to the detective was a clear indication of his desire not to talk further with the detective. The State argued that Shorter had agreed to talk with the detective after receiving his Miranda rights and he did not invoke his right to remain silent until he told the detective, “I want to go back to my cell.” The trial court agreed with the State that Shorter did not invoke his right to terminate the interview until he asked to be returned to his jail cell. The defense objection was overruled.
The detective then gave the same testimony before the jury as stated on proffer up to the point of Shorter saying, “I don’t *688 see why I should talk now, you already have these pictures, what can Bradshaw [Sheriff] do for me now?” The State then asked if at that point Shorter was placed under arrest to which the detective responded that Shorter asked to go back to his cell. The defense immediately objected. The trial court sustained the objection and instructed the jury that the last answer was stricken. The defense moved for a mistrial on three grounds: (1) Shorter’s Fifth Amendment right to remain silent had been violated; (2) the State was trying to shift the burden of proof to the defense; and (3) the jury now knew that Shorter was in jail for another crime, in addition to the robbery. The trial judge scolded the prosecutor, reminding her he had just told her not to elicit testimony that Shorter wanted to return to his cell. The prosecutor explained she was not trying to elicit that testimony with her question and was surprised by the answer. The trial judge denied Shorter’s motion for mistrial.
During the presentation of defense evidence, Shorter moved to admit the DNA forensic case report from Bode Technology Group and requested admission of the affidavit of authenticity from the DNA tester. The State renewed its objections to the admission of the forensic case report. The State also contended that there was no foundation or legal basis for admission of the affidavit. The trial judge sustained the State’s objection to the affidavit but admitted the DNA report as an exhibit, over the State’s continued objection. The exhibit gave a report on a sample taken from the MoneyGram keypad on the night of the robbery. The report revealed that the DNA consisted of a profile from at least three different people of which the manager was the major contributor. Shorter was excluded as a possible contributor to the DNA sample. After admitting this report, the defense read the report to the jury. The defense then rested and renewed his motion for judgment of acquittal, which was denied.
The jury found Shorter guilty on both counts.

Appellate Analysis

Shorter’s Post-Miranda Interview

Shorter argues that evidence of his attempt to exercise his right to remain silent was used as inculpatory evidence. The State agrees that evidence of Shorter’s demeanor and comments, upon being shown incriminating photo evidence, was inculpatory as evidence of consciousness of guilt. There is no dispute that after Shorter was given proper Miranda warnings, he initially waived his right to remain silent and began an interview with the detective. The issue we must address on appeal is whether the trial court properly determined that Shorter did not re-invoke his right to remain silent until he asked to be returned to his jail cell.
The law is clear that after a prior voluntary, knowing and intelligent waiver of Miranda rights, the police do not have to stop an interrogation and clarify an equivocal or ambiguous invocation of Fifth Amendment rights. Cuervo v. State, 967 So.2d 155, 161 (Fla.2007); State v. Owen, 696 So.2d 715, 718 (Fla.1997); Joe v. State, 66 So.3d 423, 425 (Fla. 4th DCA 2011). Once a suspect voluntarily waives Miranda rights and begins an interview by law enforcement, “[a] suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent.” Owen, 696 So.2d at 718. The determination of whether a suspect has re-invoked his or her right to remain silent is analyzed under the totality of the circumstances. See Lukehart v. State, 776 So.2d 906, 917 (Fla. *689 2000) (“[A] determination of the issues of both the voluntariness of a confession and a knowing and intelligent waiver of Miranda rights requires an examination of the totality of the circumstances”).
The interview of Shorter was relatively brief. When the detective showed still photos of Shorter from the surveillance cameras, Shorter broke eye contact, hung his head and sighed. Demeanor and body language indicating a realization that the police have incriminating photographic evidence is not the same thing as demean- or and body language indicating a desire to terminate an interview. Shorter’s demeanor and body language upon being shown surveillance photographs was not behavior a reasonable law enforcement officer would clearly recognize as an affirmative indication of the desire to terminate an interview.
When asked if the gun in the photos was a real gun or a toy, Shorter responded: “I don’t see why I should talk now, you already have these pictures, what can [Sheriff] Bradshaw do for me now?” Although one could infer from the response that Shorter wished to terminate the interview, one could also infer the response was an inquiry as to whether law enforcement could offer a deal if he were to admit guilt. The response was not an unequivocal or unambiguous statement that Shorter wanted to terminate the interview. When the detective did not immediately suggest some way in which Sheriff Bradshaw or law enforcement could help his situation, Shorter announced he wanted to return to his jail cell. We agree with the trial court that the request to return to his jail cell was the only articulate statement of sufficient clarity that any reasonable law enforcement officer would understand to be a desire to terminate the interview. The trial court made proper evidentiary rulings; the motion for mistrial was properly denied. Thus, we affirm the trial court on this issue.

Forensic Case Report

We begin by observing that case law after Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), has evolved to make clear that the Confrontation Clause prohibits the State from admitting evidence of a forensic case report under the business record exception to the rule against hearsay. State v. Johnson, 982 So.2d 672 (Fla.2008) (FDLE lab report was testimonial and, without the testimony of the preparer, its admission violated the Confrontation Clause). However, when the defense seeks to admit a forensic case report, the Confrontation Clause does not apply. Charles W. Eh-rhardt, Ehrhardt’s Florida Evidence § 802.2 at 840 (2011 ed.).
Despite concern about the admissibility of a report prepared in anticipation of litigation as a business record, the trial court admitted the forensic case report into evidence.[2] There is no dispute that the forensic case report is an out-of-court statement used to prove the truth of the matter asserted (Shorter’s DNA was not found on the MoneyGram keypad). The *690 report is hearsay as defined by section 90.801(l)(c), Florida Statutes.[3] Hearsay is not admissible unless a statutory exception applies. In this case, Shorter relies on the business record exception codified in section 90.803, Florida Statutes.
Although the State contends a proper predicate for the admission of the business record was not presented, we disagree. We are satisfied that the record supports the conclusion that the trial court made correct rulings in regards to sections 90.803(6)(b), dealing with the admissibility of opinions in the business records, and 90.803(6)(c), dealing with the notice requirement for admissibility. What we must analyze further is whether the forensic case report satisfies the requirements of section 90.803(6)(a), which provides:
(6) Records of regularly conducted business activity.—
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term “business” as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
There is no issue that Bode Technology Group was a business or profession, which prepared a report as a normal business activity after performing a DNA analysis. The report was made at or near the time the analysis was conducted by a person with knowledge (the person actually conducting the analysis). The issue to be resolved is whether the report was prepared under circumstances suggesting “the sources of information or other circumstances show lack of trustworthiness.” § 90.803(6)(a), Fla. Stat. (2010).
Florida case law has recognized Professor Charles Ehrhardt’s discussion of controlling law regarding the business record exception. See Yisrael v. State, 993 So.2d 952, 957 (Fla.2008); McElroy v. Perry, 753 So.2d 121, 125 (Fla. 2d DCA 2000); Stam-bor v. One Hundred Seventy-Second Collins Corp., 465 So.2d 1296, 1298 (Fla. 3d DCA 1985). Professor Ehrhardt has written:
Not all records regularly made by a business are admissible. A requirement of minimum reliability of a record is contained in section 90.803(6) which states that when the “sources of information or other circumstances show lack of trustworthiness” business records are not admissible.... Whenever a record is made for the purpose of preparing for litigation, its trustworthiness is suspect and should be closely scrutinized. Reports of expert witnesses who are retained for the purpose of litigation are usually inadmissible under section 90.803(6) because such reports lack the trustworthiness that is presumed to exist with most business records.
Charles W. Ehrhardt, Ehrhardt’s Florida Evidence § 803.6 at 899-900 (2011 ed.) *691 (footnotes omitted). In support of the assertion that reports by retained expert witnesses are usually inadmissible, Professor Ehrhardt cites McElroy v. Perry, 753 So.2d 121 (Fla. 2d DCA 2000).
McElroy is the first Florida case to expressly address the admissibility of a compulsory medical examination report (“CME report”) as a business record. The Second District characterized CME reports as “forensic or advocacy reports.” Id. at 125. Finding no Florida precedent, the Second District was particularly persuaded by two cases from other states: People v. Huyser, 221 Mich.App. 293, 561 N.W.2d 481 (1997), and State v. Tomah, 736 A.2d 1047 (Me.1999).
In Huyser, the Michigan Court of Appeals determined that the trial court erred by allowing the State to admit into evidence as a business record a report of a doctor it hired to examine the victim of a sex crime. The court believed the report lacked the trustworthiness normally attributed to a business record because it was a report prepared for the purpose of litigation. 561 N.W.2d at 483. In Tomah, the Supreme Judicial Court of Maine concluded that “[fjorensic expert reports are the antithesis of business records” contemplated by the statutory exception to hearsay, and such reports lack trustworthiness by the fact that they are prepared in anticipation of litigation. 736 A.2d at 1051. Agreeing with the position of those two cases, the Second District held that a CME report “prepared for the purpose of litigation lacks the trustworthiness that business records are presumed to have, and therefore, is not admissible under the business records exception.” McElroy, 753 So.2d at 126.
In addition to determining that CME reports lack the presumption of trustworthiness normally attributed to business records, the Second District in McElroy made another important point in dicta. In McElroy, the CME report was introduced into evidence during direct examination of the expert who prepared the report. The Second District observed:
Had he [the expert] not testified, the lack of opportunity for voir dire and cross-examination together with the fact that the report was prepared solely for litigation would, without question, render the admission of his report an abuse of discretion, [footnote omitted]
Id. at 126. In a footnote to the observation, the Second District quotes McCormick on Evidence:
[I]nclusion of opinion's or diagnoses within the [business record exception] rule only removes the bar of hearsay. In the absence of the availability of the expert for explanation and cross-examination, the court may conclude that probative value of this evidence is outweighed by the danger that the jury will be misled or confused. This concern is particularly significant if the opinion involves difficult matters of interpretation and a central dispute in the case, such as causation.
Id. at 126 n. 2 (quoting McCormick on Evidence § 293 at 445 (John W. Strong ed., 5th ed. 1999)) (footnote omitted). Professor Ehrhardt agrees with McCormick and states: “If an expert opinion is offered without the expert testifying and being subject to cross-examination, Section 90.403 may require the exclusion of the opinion.” Ehrhardt’s Florida Evidence § 803.6 at 903 (2011) (footnote omitted). See also Love v. Garcia, 634 So.2d 158,160 (Fla.1994) (“[E]ven if a proper predicate has been laid or the opposing party cannot prove the untrustworthiness of the evidence, the records must still withstand the test of relevancy. Accordingly, a trial judge may exclude the records if they are unfairly prejudicial or confusing.”) (citing *692 § 90.403, Fla. Stat. (1991)); Bradley v. Brotman, 836 So.2d 1129, 1135 (Fla. 4th DCA 2003) (“Even if the medical record satisfied the business record exception, the opinion still may be excluded if it is unfairly prejudicial or confusing under section 90.403, Florida Statutes. This prejudice or confusion is more likely to occur in a case where the expert does not testify at trial and is not subject to cross-examination.”).
We are not prepared to equate DNA forensic case reports with CME reports.[4] Even though a DNA forensic report prepared for litigation is arguably an advocacy report, we are not prepared to say that such reports categorically lack the presumed trustworthiness of a business record.[5] However, there remains a very significant section 90.403 concern about the admissibility of a DNA forensic report if the expert preparing the report does not testify.
The problem for the State on cross-appeal is that it never argued the forensic case report should have been excluded under section 90.403, Florida Statutes (2008).[6] Instead, the State focused its arguments on contentions that Shorter failed to present a proper predicate for the admission of the forensic case report as a business record. We are not persuaded by the State’s arguments. As stated above, we find no error in the affidavits used as a predicate for the admission of the business record and the State has failed to demonstrate that the report prepared by its own retained expert was not trustworthy. Thus, we affirm the trial court on cross-appeal.
Having determined Shorter has not shown reversible error by the trial court, the judgment and sentence for both offenses are affirmed.

Affirmed.

CIKLIN and GERBER, JJ., concur.

. See § 924.07(l)(d), Fla. Stat. (2010) (“Once the state’s cross-appeal is instituted [on a question of law when the defendant is convicted and appeals from the judgment], the appellate court shall review and rule upon the question raised by the state regardless of the disposition of the defendant’s appeal.’’).

. The trial court did not admit into evidence the affidavit by the records custodian for the company conducting the analysis or the affidavit by the lab analyst performing the DNA analysis. The trial court must determine whether the predicates for admissibility have been met. § 90.105(1), Fla. Stat. (2010). Because the affidavit of the records custodian was a predicate requirement, we find no error in declining to admit that affidavit into evidence. However, the trial court erred in not admitting the affidavit of the person conducting the analysis because the jury was deprived of the ability to evaluate the credibility of the expert conducting the analysis.

. Section 90.801(l)(c) provides: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”

. DNA analyses appear to be driven by data analysis and statistical computations, and do not usually include subjective analysis to the degree that the doctor’s medical examination would.

. It also is puzzling on the facts of this case how the State could argue the content of the report of its retained expert is untrustworthy just because the defense wanted to use it.

. In the last two paragraphs of its brief, the State makes two arguments: (1) "Such evidence [the DNA report] would be, in and of itself improperly prejudicial and persuasive to a jury, especially given that the jury would be able to read it and take it back to the jury room with them,” and (2) allowing the defense to put a forensic case report into evidence without calling the expert who prepared it as a witness will allow the defense to create "speculative and allegedly 'reasonable' doubt,” thereby possibly forcing the State to have to expend great sums of money to bring in their experts to rebut the report. Although such arguments seem to hint at section 90.403 as a basis for the argument, the State never adequately explained how the forensic case report would be unfairly prejudicial or confusing in regards to the work of the jury.