930 So.2d 779 (2006)
James BELL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-853.
District Court of Appeal of Florida, Fourth District.
May 24, 2006.
Rehearing Denied June 28, 2006.
*781 David G. Vinikoor, Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
In this appeal from a conviction on three counts of sexual battery on a child, of indecent assault, and of inducing a sexual performance by a child, defendant raises a number of issues. We focus on his contention of error in the State's amendment of the charging document at trial and his contentions of improprieties in the admission of testimony by the child and a former co-defendant.[1] On the merits, we find no error in the amendment of the charging document. But we do find prejudicial error in the State's failure to advise defendant timely that the child intended at trial to recant her pretrial deposition testimony as perjured, and also in the admission of testimony of a co-defendant without allowing the defense a reasonable opportunity to depose her. For these reasons we reverse for a new trial.

I. Trial Amendment of Charging Document
In the State's initial four-count Information,[2] the charges were all described as having occurred between January 1 and November 18, 1998. The State filed a nolle prosequi of that Information in April 1999. It then filed a new charging document, which it designated as a "Refile Information," adding the sexual performance charge. The Refile Information covered *782 the same time span as the original Information, namely from January 1 to November 18, 1998. Defendant pleaded not guilty and demanded a bill of particulars. In response the State specifically reduced the time span of the charges to the period from June 1 to October 6, 1998. The original time span was thus shrunk from ten and one-half months to slightly over four months.
Later, the State filed a third charging document, which it called an "Amended Information." Although the Amended Information included the same counts as the Refile Information, it now formally alleged that the offenses occurred during the reduced period from June to October. This Amended Information newly added a co-defendant to the same charges. Shortly afterwards, the co-defendant entered into a plea agreement with the State which included a cooperation provision relating to the prosecution of defendant.
After the case had been pending for four years, defendant filed a demand for speedy trial in October 2002, and trial was set to begin December 9th. Immediately before jury selection began, the trial judge asked the State to specify which of the three charging documents would be tried. The prosecutor specified the Refile Information. Defense counsel objected, saying that the Refile Information had been rendered void by reason of the State's subsequent Amended Information. The State insisted, however, that it would proceed on the Refile Information, arguing that the Amended Information significantly reduced the time span of the alleged offenses, as previously stated in its Bill of Particulars, and therefore made no substantive change to defendant's detriment. Defendant renewed his objection. The State again made clear that the charging document under which it was proceeding at trial was the Refile Information. The trial judge agreed to allow the State to proceed on the Refile Information as modified by the Bill of Particulars.
Defendant argues that the State's return to the Refile Information at the beginning of trial effected a substantive change in the charges on trial to his prejudice. Yet in trying the case under the Refile Information as modified by the Bill of Particulars, the State stayed within the reduced time period. None of the evidence at trial strayed from the narrower period of June 1st to October 6th. By returning to the Refile Information as the operative charging document, the State did not thereby attempt to convict defendant of acts committed during the original time span of ten and one-half months and which were outside the reduced time span. In short, the acts for which he was tried and convicted were limited to the shorter time span of the Bill of Particulars and the Amended Information. This claimed error thus amounts to little more than a procedural irregularity.
Defendant argues that he should be discharged because the Refile Information was null and void and bases this outcome on statements in State v. Anderson, 537 So.2d 1373 (Fla.1989). The specific statements on which he relies are:
"It is well settled that the filing of an amended information purporting to be a complete restatement of the charges supersedes and vitiates an earlier information. It is also clear . . . that jurisdiction to try an accused does not exist under article I, section 15 of the Florida Constitution unless there is an extant information, indictment, or presentment filed by the state."
537 So.2d at 1374. Defendant contends that the Amended Information superseded the Refile Information. He argues that the State effectively renounced the Amended Information at trial and instead *783 sought to try the case on a charging document, the Refile Information, that had been rendered null and void. By disclaiming the last filed charging document, he asserts, the State left itself without a valid charging document on which to try the case.
We think he has read too much into the above quotation from Anderson and fails to give proper effect to its result. The circumstances underlying Anderson have a strong similarity with this case. On the day before trial began in Anderson, the State filed an amended information charging defendant with first-degree burglary, instead of the second-degree burglary charged in the initial information. Nevertheless on the day of trial the prosecutor agreed with the defendant that trial would proceed on the original charge rather than the amended one. In securing the defendant's consent to that change, the trial judge explained that:
"You have the right to require the State to refile the original charge and to proceed on that. In other words, to in effect nol-pros the amended charge and refile the original charge. You could raise that as a defense or attack it on appeal if you were to be convicted on the original charge, do you understand that?"
537 So.2d at 1374. With the defendant's consent the trial proceeded on the original information. On appeal this court held that the filing of the amended information superseded the original charge, which then became null and void, as defendant argues in the present case. We also held that defendant's consent was ineffective because the absence of any valid charging document stripped the trial court of jurisdiction to proceed.
In disagreeing with our analysis, the Anderson court explained:
"the district court apparently overlooked Lackos v. State, 339 So.2d 217 (Fla. 1976), where we accepted jurisdiction. . . because of conflict with [Alvarez v. State, 157 Fla. 254, 25 So.2d 661 (1946), and Sipos v. State, 90 So.2d 113 (Fla. 1956)]. In [Lackos] during trial and over the objection of the defendant, the state was permitted to substantively amend the information by correcting the name of the owner from which the property had been allegedly stolen. Revisiting Alvarez and Sipos, we concluded that Florida Rule of Criminal Procedure 3.140(o), first adopted in 1967 and not addressed by Alvarez and Sipos, governed the resolution of such amendments, and, further:
`We are persuaded by the reasoning articulated by Judge Grimes, writing for the District Court in the instant case:
`The modern trend in both criminal and civil proceedings is to excuse technical defects which have no bearing upon the substantial rights of the parties. When procedural irregularities occur, the emphasis is on determining whether anyone was prejudiced by the departure. A defendant is entitled to a fair trial, not a perfect trial. Michigan v. Tucker, 1974, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182. Appellant received a fair trial.'. . .

Lackos, 339 So.2d at 219. Accordingly, `to the extent that Alvarez and Sipos conflict with principles enunciated herein they are expressly overruled.' Id.

Alvarez and Sipos represent a highly formalistic approach requiring that amendments to informations be resworn and refiled by the prosecutor even if the amendments do not violate due process (notice) or otherwise prejudice the defendant. By overruling Alvarez and Sipos, *784 Lackos signaled the adoption of a due process standard and the abandonment of the highly technical and formalistic requirement that every amendment be resworn and refiled. Lackos stands for the proposition that the state may substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant. This proposition is even more relevant when, as here, the amendment occurs prior to trial. Respondent does not argue, and the district court did not find, that he suffered any prejudice from being tried as originally charged." [e.s.]
Anderson, 537 So.2d at 1375. The court went on to state that "the original information was vitiated by the filing of an amended information. . . ." 537 So.2d at 1375-76. The court plainly held that "[t]he fact that the amended information was subsequently orally amended did not have the effect of divesting the court of jurisdiction." 537 So.2d at 1376.
Defendant's argument in support of discharge is premised on the same "highly technical and formalistic requirement that every amendment be resworn and refiled." 537 So.2d at 1375. The state's action at the beginning of trial to return to the Refile Information was identical to the circumstances in Anderson, an oral amendment of the charging document to return to a previous charging document that had been vitiated by an amendment. If the state may substantively amend an information during trial with the court's permission (per Anderson), then surely the state may make a purely procedural modification that does not change the charges on trial in any way. See also State v. Clements, 903 So.2d 919 (Fla.2005) (state needed trial court's permission to amend information in middle of trial, which could not become effective without a determination that the amendment would not prejudice the defendant's substantial rights). Here the trial judge expressly allowed the State to proceed on the earlier charging document. The trial court's decision was based on the fact that allowing the change would not prejudice defendant in any conceivable way. What the state did was simply a technical alteration not affecting the charges or proof to be offered. We find no error in proceeding on the charge actually used at trial.

II. Recantation of Deposition Testimony of Child Witness
The child gave a pretrial deposition nearly a year before trial began. In it she testified to facts that even if believed by the jury would not have supported a conviction for capital sexual battery. Then at trial she testified to different facts that if believed would support a conviction for two counts of capital sexual battery. She explained her change by saying that she was little when she gave the deposition testimony, and that she was embarrassed because her mother was at the deposition.
The record supports defendant's contention that the State learned of her planned change in testimony during the week before trial began. After jury selection during a hearing on pending pretrial motions, the State hinted at changed testimony of the child but failed to advise defense counsel of the change or its substance. The State clearly did not notify defendant that the child would effectually admit to perjury at the deposition. Defense counsel learned for the first time during cross-examination of the child at trial that she was now taking the position that her deposition testimony was knowingly false. Under these circumstances, defendant argues that it was an abuse of *785 discretion not to grant a mistrial because of the State's conduct.
These facts are uncommonly like the circumstances in a very recent decision of the supreme court involving this identical issue. In Scipio v. State, 928 So.2d 1138 (Fla. 2006), on the opening day of trial the defense attorney reconfirmed pretrial testimony with an investigator from the medical examiner's office that he had seen a weapon underneath the body of the decedent, a fact that would have suggested reasonable doubts about defendant's guilt. After their conversation, the prosecutor asked the same witness to go back to the prosecutor's office and look at a photograph. They did so, and the witness thereupon advised the prosecutor that he would change his deposition testimony as a result. The prosecutor did not immediately notify defendant. The trial court denied a motion for mistrial, which the district court affirmed on harmless error grounds.
The supreme court held that the State had an obligation under the rule to disclose any material change in the investigator's statement. See Fla. R.Crim. P. 3.220(j). The supreme court emphasized that the district courts have found discovery violations when "a witness's subsequent statement to the State materially alters an existing written or recorded statement provided by the State to the defense." 2006 WL 345025 at *4, 928 So.2d at 1143. The court noted that it had itself "consistently held that `Florida's criminal discovery rules are designed to prevent surprise by either the prosecution or the defense. Their purpose is to facilitate a truthful fact-finding process.'" 2006 WL 345025 at *5, 928 So.2d at 1144 (quoting Kilpatrick v. State, 376 So.2d 386, 388 (Fla.1979)). Criminal discovery is designed, the court said, to prevent surprise by both sides in a criminal trial and to facilitate a "truthful fact-finding process." 2006 WL 345025 at *5, 928 So.2d at 1144. The chief purpose of such discovery is to prevent "trial by ambush." Id. This policy requires disclosure of a reversal of prior testimony in discovery. Id. The court quoted with obvious approval the observation of this very court that "`[a] party can hardly prepare for [testimony] that it doesn't know about, much less one that is a complete reversal of the opinion it has been provided.'" Id. (quoting Office Depot, Inc. v. Miller, 584 So.2d 587, 590 (Fla. 4th DCA 1991)). The supreme court made clear:
"Of course, the policy of avoiding trial by ambush or surprise has even greater application in the criminal context, where the stakes are much higher and the obligation of the State to see that justice is done is much greater than that of the private litigants in a civil dispute. Indeed, the United States Supreme Court long ago made clear:
The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore . . . is not that it shall win a case, but that justice shall be done. . . . He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.

Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). These words seem especially appropriate to the circumstances before us today." [f.o.]
2006 WL 345025 at *6, 928 So.2d at 1145. Finally in its holding the court said:
"The State's calculated failure to inform the defense of the important and dramatic change in testimony of its medical examiner's investigator not only violated *786 the prosecutor's duty not to strike `foul' blows, but undermined the very purpose of the discovery rules as set out by this Court . . . since the State was fully aware that the defense intended to rely heavily on the testimony of the State's investigator and would be completely surprised by the witness's changed testimony at trial."
Id.
We are unable to distinguish the State's conduct in the present case from Scipio. Indeed, the State's non-disclosure is even more calculated here because the record supports defendant's contention that the State knew of the child's recantation at least several days before trial began. For example during argument on defendant's motion to exclude an ex parte statement of the victim given years before the deposition testimony, the State openly argued that differences between the statement and the deposition did not point against reliability of the statement because the child was "horrified" at the deposition by the attendance of her mother. The State very well knew from the many pretrial proceedings in this case that a principal contention of the defense at trial was that defendant could be found guilty at most of the lesser crimes of lewd and lascivious conduct because the deposition testimony of the child would not support a finding of guilt for capital sexual battery.
Given these circumstances, it is not possible for us to find the denial of a mistrial harmless error. The difference between the child testifying at trial as she did in her deposition and testifying to facts supporting capital sexual battery patently had an adverse effect on defendant. As defense counsel aptly argued to the trial judge:
"Essentially . . . I picked a jury without knowing what the evidence is. . . . I picked a jury without knowing that the child had perjured herself in the one and only deposition that I took of her when she testified at deposition [some nine months earlier]. I picked a jury with little more knowledge than I would have if the defendant had been arrested yesterday."
Applying the principles and analysis of Scipio, we conclude that the trial court abused its discretion in denying defendant's motion for a mistrial based on the failure of the State to disclose this highly significant change in testimony.

III. Surprise Testimony of Previous Co-Defendant
We turn now to defendant's issue of a discovery violation regarding the testimony of Tina Oakley, also charged in the Refile Information. She was the victim's babysitter and an eyewitness to events on trial. In her plea agreement, she committed herself to testifying at trial. From the time she was charged, nearly four years before the trial was held, she had refused to submit to a deposition by defendant. Just a few days before trial began, she had been held in contempt for refusing to give a deposition and still refused to do so. When the jury was selected and at the time of opening statements, she was not a potential witness. Defense counsel accordingly told the jury in his opening statement that the only witness to the events would be the alleged victim.
The record is filled with defendant's persistent but unavailing attempts to take her deposition. He had subpoenaed her on three different times for deposition. Her attorney insisted that further attempts to subpoena her be withheld until this court had ruled on her appeal. At one point nearly a year and a half before trial, her attorney asserted that even though she had entered a plea and given a statement to the State, she had not been given *787 immunity, and that her statement was inaccurate. For that reason, she was now asserting her Fifth Amendment right to silence and would refuse to submit to a deposition. Thereafter, she repeatedly refused to do so.
Nevertheless, defendant continued his efforts to take her deposition right up to the day trial began. A few days before trial, the State advised defense counsel that she would now submit to the deposition. Defendant immediately made arrangements for the deposition, but once again she refused to testify. The State quickly moved for an order compelling her testimony. The trial judge ordered her to do so under pain of contempt, and still she refused to testify the following day, which was just four days before jury selection began. The trial judge warned her that her persistent refusal was a violation of her plea agreement and that a harsher sentence could be imposed on her for her refusal, that any sentence for contempt could significantly delay her release from prison. Still she refused. The judge found her in contempt and sentenced her to six months in jail, subject to purge for compliance. Still she refused. This was just two days before jury selection began. In opening statement, defense counsel told the jury they would not hear testimony about the events from anyone except the alleged victim.
In spite of everything that had happened, during the presentation of its case-in-chief the State suddenly and unexpectedly called her to testify. Defendant promptly and vigorously objected, recalling all of this history. If the court would not entirely exclude her from testifying, counsel prayed that the court would at a minimum continue the trial for at least a week to allow him to take her deposition and prepare a new defense strategy. The trial judge's response was to allow a deposition if defense counsel "could do so before 12:30." It was then already 11:45.
As the foregoing account amply demonstrates, the Record does not support the court's reasons for denying defendant's mid-trial motion to exclude the testimony of Oakley. He did not have ample opportunity to take a pretrial discovery deposition of the witness. Every attempt was rebuffed by the witness, even after she had been held in contempt. The trial court's order to take a discovery deposition during trial failed to address the effect of Oakley's testimony after defense counsel had already told the jury in the opening statement that she would not testify.
Even if the court might properly have allowed the co-defendant to testify at trial, it was also manifest error to do so without allowing defense counsel a reasonable continuance of the trial. It is a false conflict to say that the alternative here was whether the truth would be kept from the jury without her testimony. As defense counsel pointed out when the issue arose, if this witness were now suddenly to testify he would need considerable time to prepare for a deposition of this witness. And he would need additional time to prepare a new strategy, for the dynamic of the trial was radically altered by her appearance and testimony. It is fundamental that defendants be allowed an adequate opportunity to investigate witnesses and prepare applicable defense strategies. Cook v. State, 595 So.2d 994, 996 (Fla. 3d DCA 1992). When the State is allowed to produce witnesses at trial who constitute a considerable surprise to defendant, the defense should be afforded a reasonable continuance to take discovery depositions of such witnesses. Smith v. State, 578 So.2d 366, 367 (Fla. 3d DCA 1991).
The State argues that any error in this regard is harmless. The harmless *788 error standard used to assess the State's discovery violation does not focus on whether the discovery violation would have made a difference in the verdict. Rather, the inquiry is whether there is a reasonable possibility that the discovery violation materially hindered defendant's trial preparation or strategy and, only if the appellate court can determine beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation, can the error be deemed harmless. Scipio, 2006 WL 345025 at *8, 928 So.2d at 1147. In short, the test is not whether the verdict would have been different but whether defendant was prejudiced in trial preparation. Id. The details of defendant's attempts to take her deposition before trial make clear the adverse effect that this surprise testimony had on pretrial preparations of the accused.
The importance and effect of her testimony cannot be minimized. Her testimony supported the child witness's testimony and added significant aspects. It is impossible to find beyond a reasonable doubt that her testimony had no effect on the jury prejudicial to defendant. Goodwin v. State, 751 So.2d 537, 540 (Fla.1999) (harmless error analysis requires appellate courts to first consider nature of error and then any effect error had on triers of fact). We find no alternative to the conclusion that the trial judge abused his discretion in failing to grant defendant's motion. He is entitled to a new trial.
Reversed.
GUNTHER and TAYLOR, JJ., concur.
NOTES
[1] He also argues that the court improperly admitted testimony and 20-year old photographs relating to conduct in Ohio; that the trial court abused its discretion in refusing to strike two jurors for cause; that the court should not have allowed a taped statement to be available to the jury during deliberations; and that there was error in the verdict form which led to an Apprendi violation. These issues are moot in light of our reversal.
[2] The first Information did not include the charge of sexual performance.