PER CURIAM.
We review a referee’s report recommending that attorney Reid Alexander Co-calis be diverted to the Florida Bar’s Practice and Professionalism Enhancement Program and, in particular, that Cocalis be directed to attend the Bar’s Ethics School at his expense. See R. Regulating Fla. Bar 3 — 5.3(h)(2). The Bar petitions for review of that recommendation. We have jurisdiction. See art. V, § 15, Fla. Const.; R. Regulating Fla. Bar 3-5.3(h)(4).
*164 BACKGROUND
The Florida Bar filed a complaint against Cocalis alleging that Cocalis engaged in misconduct in handling a personal injury suit. Specifically, the Bar alleged that Cocalis’s phone call to an adverse party’s treating physician and his handling of another physician’s subpoenaed records violated Rules Regulating the Florida Bar 3-4.3 (engaging in misconduct or minor misconduct); 4 — 3.3(a)(1) (knowingly making a false statement of material fact or law to a tribunal.); 4-3.4(a) (unlawfully obstructing another party’s access to evidence); 4-8.4(a) (violating the Rules of Professional Conduct); 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 4-8.4(d) (engaging in conduct prejudicial to the administration of justice).
The referee conducted a hearing in January 2006. The initial referee’s report made findings of fact and concluded that Cocalis’s conduct was unprofessional, inappropriate, and sharp practice, but that it did not violate rules 4-3.3(a)(l), 4-3.4(a), or 4-8.4(a),(c), or (d). The referee conducted a second hearing in April 2006 to determine whether Coealis’s conduct violated rule 3-4.3 and, if so, what discipline to recommend. Following that hearing, the referee filed a second report. This report adopted the findings and conclusions of the first. The referee stopped short of deciding whether Cocalis’s conduct violated the Rules Regulating the Florida Bar and instead recommended that Cocalis’s case be referred to the Bar’s practice and professionalism program and that Cocalis be ordered to take the Bar’s course on ethics and professionalism.[1] The Bar petitioned for review. In its brief, the Bar argues that the referee erred in failing to find Cocalis guilty of unethical conduct and in failing to recommend that Cocalis be suspended.
Based on the facts found by the referee, which we approve, we cannot agree that diversion is appropriate. Because the referee stopped short of concluding whether Cocalis’s conduct violated any of the Rules Regulating the Florida Bar with which he was charged, we first address this issue, which requires us to examine Cocalis’s conduct.
Cocalis represented the defendant, Michelle Brotman, in Bradley v. Brotman, Case No. 98-020519(02), in Broward County Circuit Court. The plaintiffs, the Brad-leys, alleged that Brotman’s dog bit their two-year-old daughter and that the bite caused or aggravated permanent injuries, including alopecia areata, a skin disease resulting in hair loss on the scalp. The Bradleys were represented by Jon Krup-nick.
Before trial, Krupnick listed several doctors in his expert witness list for trial. Cocalis filed a motion to limit this list, which the trial court granted. Krupnick amended his list to include only three physicians who would testify about whether the dog bite caused the child’s alopecia. One of the plaintiffs’ experts, Dr. Bernhardt, was not listed as an expert on causation.
A few days before the trial date and after the witness lists were finalized, Krupnick sent Cocalis a letter listing thirteen reasons why the defense should settle the case. One of these reasons was that “Dr. Bernhardt, whom you have not de *165 posed, will testify unequivocally to the extensive hair loss and the fact that it was precipitated by the dog bite.”
Shortly after receiving Krupnick’s letter, Cocalis, without notifying Krupnick or the Bradleys, called Dr. Bernhardt, identified himself as defense counsel in Bradley and as a patient of Dr. Bernhardt, and asked whether Dr. Bernhardt intended to testify about causation.[2] The referee found that Cocalis told Dr. Bernhardt that he would not ask him about the patient’s care and treatment. However, by asking Dr. Bernhardt whether he would be testifying for the plaintiff about causation, Cocalis effectively solicited the doctor’s opinion of the patient’s medical condition.
After Krupnick learned of Cocalis’s call to Dr. Bernhardt, he filed a motion for sanctions and to strike the defense’s pleadings in Bradley, arguing that Dr. Bernhardt’s testimony had been tainted by his contact with Cocalis. Cocalis argued that there was no prejudice because Dr. Bernhardt could not testify on causation because he was not listed as a causation expert in the plaintiffs’ pretrial witness list.
The trial judge ordered the child’s guardian ad litem, Lawrence Kuvin, to investigate the phone call. The judge then held a hearing and denied Krupnick’s motion. Dr. Bernhardt did not testify at trial because his testimony would not have helped the plaintiffs, not because he became hostile to his patient after talking to Cocalis.
Another treating physician, Dr. Unis, was deposed in September 1999. His records as of that date were attached to his deposition. Because Krupnick refused to stipulate before trial to the authenticity of the records, Cocalis sent a trial subpoena to Dr. Unis’s records custodian. In response to the subpoena, Dr. Unis’s records custodian mistakenly mailed the records to Cocalis. Cocalis returned the records and explained that they were to be brought to trial. Cocalis did not inform Krupnick that the records had been erroneously sent to him. The mailed copy of the records, later admitted by stipulation, contained a new entry not contained in the copy attached to Dr. Unis’s deposition. The new entry documented a telephone conversation between Dr. Unis and Krupnick in May 2000. The note stated: “I advised him [Krupnick] that I did not think that the patient’s persistent problem with al-opecia areata at this point would be due to stress from a prior dog bite.” When Co-calis called the records custodian as a witness during trial, Krupnick stipulated to admission of the medical records without reviewing them. Cocalis did not advise either Krupnick or the court about the added notation — the admission of which as evidence was at least debatable — which the referee later characterized as “sharp practice.”
When Krupnick discovered the unfavorable notation in the stipulated records and realized that Cocalis intended to use the notation in closing arguments, he renewed his motion for sanctions and to strike the defense’s pleadings. He also moved to have the notation redacted from the records.[3] The court denied Krupnick’s mo *166 tions. According to Krupnick, the trial judge told him, “You stipulated to it, you got [sic] to live with your stipulations.” Cocalis blew up a posterboard-size version of the notation and made it the focus of his closing argument.
The jury awarded the Bradleys $8000 for past medical expenses, but no damages for future medical expenses. On appeal, the Fourth District reversed, finding the trial court had abused its discretion in admitting Dr. Unis’s medical chart with the unfavorable notation. Bradley v. Brotman, 836 So.2d 1129, 1133 (Fla. 4th DCA 2003). The Fourth District opinion also commented on Cocalis’s lack of professionalism in the underlying proceedings, stating, “[W]e condemn the actions of defense counsel as to both the contact with Dr. Bernhardt and the strategic concealment of Dr. Unis’ records.” Id. at 1136.
ANALYSIS
Rule 3-5.3 of the Rules Regulating the Florida Bar provides, under specified conditions, for diversion of disciplinary cases to practice and professionalism enhancement programs. Subdivision (b) provides that “[djisciplinary cases that otherwise would be disposed of by a finding of minor misconduct or by a finding of no probable cause with a letter of advice are eligible for diversion to practice and professionalism enhancement programs.” Recommendations of diversion can occur either before or after a formal complaint is filed. Subdivision (h) of the rule addresses diversions at the referee level, as occurred here. Rule 3 — 5.3(h)(2), titled “After Submission of Evidence,” provides:
A referee may recommend diversion of a disciplinary case to a practice and professionalism enhancement program if, after submission of evidence, but before a finding of guilt, the referee determines that, if proven, the conduct alleged to have been committed by the respondent is not more serious than minor misconduct.
Either the Bar or the respondent can appeal a referee’s recommendation of diversion, unless the parties stipulated to it. R. Regulating Fla. Bar 3-5.3(h)(4). The referee may also recommend that the attorney be required to participate in the Bar’s practice and professionalism enhancement program as part of a disciplinary sanction. Id. 3-5.3(h)(5).
Rule 3-4.3, the only remaining rule violation alleged by the Bar in the complaint and unresolved at the time of the hearing on sanctions, is titled “Misconduct and minor misconduct.”[4] This rule provides that the “commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.” We need not address whether the referee erred in concluding that Cocalis’s conduct did not violate rules 4-3.3(a)(l), 4-3.4(a), and 4-8.4(a)(c) and (d), because we conclude that Cocalis’s conduct violated 3-4.3 and that his misconduct was more than “minor,” making true diversion inappropriate.
*167 While Cocalis’s telephone call to Dr. Bernhardt was unprofessional and unethical, the Court is more troubled by Cocal-is’s “sharp practice” in failing to advise opposing counsel that he had inadvertently received the patient’s medical records from one of the treating physicians prior to trial, that those records contained notes of a telephone conversation between the physician and plaintiffs’ counsel that was damaging to plaintiffs’ case, and that the records he was asking the trial court to admit into evidence were not the same records as those attached to the treating physician’s deposition. Under these circumstances, Cocalis’s conduct offends our well-recognized policy that cases should be decided on the merits and not by a lawyer’s stooping to sneaky or underhanded trial tactics. See Colby Materials v. Caldwell Constr., 926 So.2d 1181, 1183 (Fla.2006) (stressing the importance of deciding cases on their merits); Bell v. State, 930 So.2d 779, 781 (Fla. 4th DCA) (holding that the state’s failure to timely advise the defendant that a witness intended to recant her earlier deposition testimony was prejudicial error requiring a new trial and that the purpose of the discovery rules is to facilitate a truthful fact-finding process), review denied, 941 So.2d 367 (Fla.2006); Tetrault v. Fairchild, 799 So.2d 226, 228 (Fla. 5th DCA 2001) (reversing a verdict in plaintiffs’ favor where the trial court allowed the plaintiffs’ medical expert to testify based on MRIs even though the plaintiff had not disclosed the topic of the testimony during discovery); id. at 229 (Harris, J., concurring and concurring specially) (stating that the “courts should not permit trial by ambush regardless of which party is riding blithely through the pass”).
In our estimation, this is not the kind of minor misconduct sufficiently addressed by diversion. On the other hand — and although it is a close call — we do not believe that the two actions at issue, which occurred about six years ago, warrant a thirty-day suspension, as the Bar urges.
In reviewing a referee’s recommended discipline of an attorney, our scope of review is broader than that afforded to the referee’s findings of fact because it is ultimately the Court’s responsibility to order the appropriate sanction. Fla. Bar v. Miller, 863 So.2d 231, 235 (Fla.2003); Fla. Bar v. Sayler, 721 So.2d 1152, 1155 (Fla.1998); see also art. V, 15, Fla. Const. Generally, however, we will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing caselaw and the Florida Standards for Imposing Lawyer Sanctions. Miller, 863 So.2d at 235.
Here, the referee made no recommendation of discipline. Diversion alone is not a sanction. R. Regulating Fla. Bar 3-5.3(i). Therefore, we proceed in determining the appropriate sanction without remanding this matter to the referee for further proceedings and for guidance review existing caselaw and the Florida Standards for Imposing Lawyer Sanctions. The standards applicable to these circumstances are 5.13 and 6.13. Standard 5.13 provides that a public reprimand is appropriate “when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer’s fitness to practice law.” Standard 6.13 provides that a public reprimand is appropriate “when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld.”
We also find helpful the case of Florida Bar v. Sayler, 721 So.2d 1152 (Fla.1998). In Sayler, the respondent represented the claimant in a worker’s compensation case. He sent opposing counsel a letter with an article about the murder of an attorney *168 who represented an employer and a worker’s compensation servicing agent, in violation of the rules against the commission by a lawyer of any act unlawful or contrary to honesty and justice, including rule 3-4.3. We imposed a public reprimand in combination with participation in the Bar’s practice and professionalism program, a six-month probationary period, and a psychological evaluation. While Sayler’s conduct was different in character from Cocalis’s, in terms of egregiousness it was similar.
Based upon the case law and standards, as well as the referee’s findings that Cocal-is, a Bar member since 1987, had no previous disciplinary record, cooperated with the Bar throughout the proceedings, including stipulating that he would reimburse the Bar’s costs, and recognized the impropriety of his conduct, we hold that a public reprimand by the Board of Governors of The Florida Bar and participation in the Bar’s practice and professionalism program on the terms recommended by the referee to be the appropriate discipline in this case.
CONCLUSION
Accordingly, Reid Alexander Cocalis is hereby ordered to appear before the Board of Governors of The Florida Bar to receive a public reprimand for his misconduct. He is also ordered to enroll in The Florida Bar’s Practice and Professionalism Enhancement Program and to attend the Bar’s Ethics School at his own expense.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Reid Alexander Cocalis in the amount of $1775, for which sum let execution issue.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, C.J., recused.

. The referee determined that the interests of justice would be best served by diversion because Cocalis "appears to be an otherwise good lawyer, who has learned from his mistakes in the Bradley litigation." The referee emphasized that Cocalis, a member of the Bar since 1987, had no previous disciplinary record. The referee further noted that the Fourth District’s opinion has already served as a "very effective public reprimand."

. Dr. Bernhardt was a prominent dermatologist in the Fort Lauderdale area and had treated Cocalis, his family, and defense counsel Rogers. Before the phone call, neither party was concerned about this relationship.

. The Bar's complaint also alleged that Cocal-is made a misrepresentation to the trial court during the sanction hearing. During the hearing, Krupnick asked Cocalis if he had had any other contacts with his experts. Cocalis did not disclose the inadvertent receipt of Dr. Unis's records. The referee found there was no misrepresentation because Cocalis believed that issuing a trial subpoena to a dis *166 closed witness was not an ex parte communication. The referee further found that issuing the subpoena without additional notice beyond the witness and exhibit list did not violate Florida law and that Cocalis acted ethically in issuing the subpoena.

. The referee, in his initial report, “concluded that Attorney Cocalis did not violate most of the Rules of Professional Conduct set forth in The Florida Bar Complaint’’ and listed rules 4-3.3(a)(1), 4-3.4(a), and 4-8.4(a)(c) and (d) as the rules Cocalis did not violate.