PER CURIAM.
We have for review a referee’s report recommending that Respondent Richard Scott Draughon be found guilty of professional misconduct and receive a public reprimand. The Florida Bar has filed a petition for review of the report, challenging the referee’s recommended sanction. Draughon has filed a cross-petition for review. We have jurisdiction. See art. V, § 15, Fla. Const. As discussed below, we approve the referee’s findings of fact, as well as the referee’s recommendation that Draughon be found guilty of violating Rule Regulating the Florida Bar 3-4.3 (Misconduct and Minor Misconduct). However, we disapprove the referee’s recommended sanction, and instead impose a one-year suspension.
FACTS
The Florida Bar filed a disciplinary ease against Draughon alleging that he engaged in misconduct in violation of Rules Regulating the Florida Bar 3-4.3 (Misconduct and Minor Misconduct) and 4-4.3(a) (Dealing with Unrepresented Persons). A referee was appointed to consider the matter. Following a hearing, the referee submitted his report for the Court’s review, in which he makes the following findings and recommendations.
Draughon was first admitted to The Florida Bar in 1987. The transactions giving rise to this disciplinary case began several years later in 1993, when Drau-ghon was approached by a friend and client for help in purchasing residential property located in Johnstown, Pennsylvania, known as the “Heather Lane property.” The client had been unable to secure traditional mortgage financing to buy the property from the property owner, Sylvia Onusic, and he asked Draughon to facilitate the transaction. Draughon formed the National Lease Management Corporation (NLMC), an organization in which he was the sole shareholder. Indeed, the referee found that NLMC’s purpose was to purchase and manage the Heather Lane property, and lease it to Draughon’s client to use as a family residence. Accordingly, Draughon, on behalf of NLMC, drafted and signed a Letter of Intent (LOI) to purchase the Heather Lane property from Ms. Onusic.[1] According to the LOI, the total purchase price was $315,000. Ms. Onusic received $7,500 as a down payment; the remaining balance would be financed through a promissory note which required NLMC to make monthly payments to Ms. Onusic over a period of several years.
The first promissory note was executed in June 1993. Several days later Ms. Onu-sic transferred the deed to the Heather Lane property to NLMC.[2] At that time, Draughon’s client signed an agreement to lease the Heather Lane property from NLMC.
The referee found that over the course of the next several years, NLMC made some payments to Ms. Onusic as required *568 under the LOI and the first promissory note. NLMC also executed a second and a third promissory note. Under the terms of the third promissory note, signed in January 2001, NLMC owed Ms. Onusic $110,000, plus interest.
Significantly, in September 2001, Drau-ghon transferred the Heather Lane property from NLMC to himself, individually. The referee found that Draughon did not pay NLMC any consideration for the transfer. As a result, the referee found that the corporation was left without any significant assets. Immediately after transferring the Heather Lane property, Draughon took out a mortgage against the property in the amount of $274,975. The referee found that Draughon used the money to pay his personal tax liabilities; none of the funds were used to pay the $110,000 outstanding balance owed Ms. Onusic under the third promissory note.
In 2003, Ms. Onusic hired a lawyer to pursue legal action against Draughon and NLMC. However, while the case was pending in Pennsylvania state court, Drau-ghon filed for bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania, staying the state court action. Ms. Onusic then filed a “Complaint to Determine Dischargeability of Debt” in Draughon’s bankruptcy proceeding, seeking a determination that Draughon owed her a debt that was not dischargeable in bankruptcy. The bankruptcy court held a full hearing on the motion, and entered a Memorandum Opinion on August 21, 2007. In its opinion, the bankruptcy court identified the issue as whether Draughon and his wife committed “actual fraud” such that the debt was excepted from discharge. See In re Draughon, No. 06-70405 BM, 2007 WL 7645346, at *5 (Bankr.W.D.Pa. Aug. 21, 2007). The court found:
To alleviate their tax problem with the IRS, debtors Richard Draughon and Lynn McDaniel decided to take preemptive action against plaintiff [Ms. On-usic]. To have equity with which to obtain a loan and hold the IRS at bay, debtors decided that NLMC would convey the property to them without paying any consideration for the transfer before plaintiff took action and acquired a judgment lien against the property. Although debtors’ residence in Florida had sufficient equity to secure such a loan, they obviously chose not to do so.
By so doing, debtors undertook to cheat plaintiff by knowingly and intentionally depriving her of an opportunity to take action against NLMC to satisfy the amount owed under the third note. Their machination succeeded. Apart from real property, NLMC had assets of little or no value upon which plaintiff could levy to satisfy a judgment.
Id. at *7. The bankruptcy court concluded that NLMC’s conveyance of the property to Draughon, without considération, “unquestionably was fraudulent.” Id. at *8. The referee in this disciplinary case considered much of the same evidence presented to the bankruptcy court and has independently arrived at substantially the same findings — that is, in fraudulently transferring the Heather Lane property to himself, Draughon acted with the actual intent to defraud Ms. Onusic, the sole creditor of NLMC.
Based on these facts, the referee recommended that Draughon be found guilty of violating Bar rule 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline).[3] Al *569 though it is clear that Draughon was not acting in a formal attorney-client relationship, the referee concluded that Draughon was bound by the Bar’s ethical rules. Moreover, the referee found that Drau-ghon’s actions in transferring the Heather Lane property to himself, without consideration, constituted a fraudulent transfer under both federal and state law, and was done with the actual intent to hinder or delay Ms. Onusic as a creditor of NLMC. The referee concluded that this action was not only unlawful, but also contrary to honesty and justice, in violation of Bar rule 3-4.3.
The referee found five aggravating factors: (1) Draughon had a dishonest or selfish motive; (2) he has refused to acknowledge the wrongful nature of his conduct; (3) Ms. Onusic was vulnerable to Draughon’s control over their financial transactions; (4) Draughon had substantial experience in the practice of law; and (5) until recently, Draughon had shown an indifference to making restitution. The referee also found several mitigating factors, including: (1) the absence of a prior disciplinary record; (2) the fraudulent transfer occurred while Draughon was suffering extreme economic pressure; (3) he consulted with an attorney in Pennsylvania in these transactions; and (4) his expert witnesses were able to advocate a defense for certain of his actions, although the referee found that their explanation was a “strained and aggressive interpretation” of the facts. Ultimately, based on the recommendation of guilt, as well as his findings in aggravation and mitigation, the referee recommended that Draughon receive a public reprimand. Further, the referee recommended that the Court award costs to the Bar.
As noted, the Bar has filed a petition seeking review of the referee’s recommended sanction. Draughon has also filed a cross-petition for review. He challenges the referee’s findings of fact, recommendation as to guilt, and findings in aggravation and mitigation.
ANALYSIS
The Referee’s Recommendation as to Guilt
In his cross-petition for review, Draughon argues that the referee’s recommendation that he be found guilty of violating Bar rule 3-4.3 is not supported. To the extent Draughon disputes the referee’s findings of fact, the Court’s standard of review for evaluating a referee’s factual findings is as follows: this Court’s review of such matters is limited, and if a referee’s findings of fact are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. Fla. Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000); see also Fla. Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998). To the extent he challenges the referee’s recommendation as to guilt, the Court has repeatedly stated that the referee’s factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Shour-eas, 913 So.2d 554, 557-558 (Fla.2005).
Draughon first contends that rule 3-4.3 cannot serve as an independent basis *570 for imposing discipline. We do not agree. Rule 3-4.3 provides:
The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibited acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.
Thus, the rule expressly contemplates that the enumerated categories of misconduct — specifically the Rules of Professional Conduct contained in Chapter 4 of the Rules Regulating the Florida Bar — are not intended to be an exhaustive list of unethical conduct that may provide grounds for imposing discipline. Rather, the commission by a lawyer of any act that is “unlawful or contrary to honesty and justice” may be cause for discipline. Consistent with this reading of the rule, we have previously imposed discipline where the sole ethical violation was of rule 3-4.3. See Florida Bar v. Cocalis, 959 So.2d 163, 166 (Fla.2007) (holding that Cocalis’s conduct while representing a client in a personal injury suit was unprofessional and unethical and finding no need to address “whether the referee erred in concluding that Cocalis’s conduct did not violate rules 4 — 3.3(a)(1), 4-3.4(a), and 4-8.4(a)(c) and (d), because [it] violated 3-4.3”).
Draughon next argues that, even if rule 3-4.3 does provide a basis for discipline, in this case the referee’s recommendation of guilt is not supported. We disagree, and we approve the referee’s recommendation of guilt.
The primary basis for the referee’s recommendation is Draughon’s transfer of the Heather Lane property from NLMC to himself, individually. Draughon transferred the Heather Lane property without consideration, leaving NLMC without sufficient assets to satisfy its obligations to Ms. Onusic. His actions were knowing and intentional, and deprived Ms. Onusic of the opportunity to take action against NLMC to satisfy the amount owed under the third promissory note. Although Draughon has pointed to evidence in the record, particularly the testimony from his expert witnesses, to support his contention that NLMC did have some assets to cover its debt to Ms. Onusic, the referee rejected this testimony as not credible. This Court has long held, “The referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect.” Fla. Bar v. Tobkin, 944 So.2d 219, 224 (Fla.2006) (quoting Fla. Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991)). Simply stated, Draughon has failed to present clear and convincing evidence to support his contention that the referee’s credibility assessments are incorrect.
It is notable that the United States Bankruptcy Court for the Western District of Pennsylvania also concluded that Drau-ghon’s transfer of the Heather Lane property was fraudulent. As set forth in the excerpts from the bankruptcy court’s Memorandum Opinion, quoted above, that court found that Draughon “undertook to cheat plaintiff by knowingly and intentionally depriving her of an opportunity to take action against NLMC to satisfy the amount owed under the third note. Their *571 machination succeeded.” In re Draughon, No. 06-70405 BM, 2007 WL 7645346, at *7. The referee did not accept these findings as established facts. Instead, he considered much of the same evidence and testimony and arrived at substantially the same conclusion — in fraudulently transferring the Heather Lane property to himself, Draughon acted with the actual intent to defraud Ms. Onusic as a creditor of NLMC. Accordingly, we approve the referee’s recommendation that Draughon be found guilty of violating rule 3-4.3.
The Referee’s Recommendation as to Discipline
With regard to the referee’s recommended sanction, Draughon challenges the referee’s findings in aggravation and mitigation. However, we approve those findings without further discussion.
In its petition, the Bar urges the Court to disapprove the referee’s recommended discipline, a public reprimand, and impose a one-year suspension from the practice of law. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
There is little case law from this Court addressing the appropriate sanction when an attorney is found guilty of violating only rule 3^4.3. In Cocalis, the referee found that the respondent engaged in “unprofessional, inappropriate, and sharp practice” while representing a client in a personal injury case. See Cocalis, 959 So.2d at 164. Although the referee recommended that Cocalis be found not guilty of violating of any Bar rules, and that he be referred to the Bar’s practice and professionalism program, the Court rejected this recommendation. The Court noted that Cocalis’s actions were not minor misconduct warranting diversion. Indeed, the Court was particularly troubled by Cocalis’s failure to advise opposing counsel of certain facts, as well as his submission into evidence of medical records that he knew were different from the medical records produced during discovery. Id. at 167. Based on this conduct, the Court found Cocalis in violation of rule 3-4.3 and imposed a public reprimand.
Draughon’s misconduct in this case is significantly more egregious than that in Cocalis. Draughon transferred the Heather Lane property to himself with the actual intent to hinder or delay Ms. Onusic as a creditor of NLMC. Although Drau-ghon was acting on behalf of his own corporation, and not as a lawyer representing a client in a transaction, he is nonetheless a member of The Florida Bar and subject to the disciplinary authority of this Court. See R. Regulating Fla. Bar 3-4.1. The Court expects members of the Bar “to conduct their personal business affairs with honesty and in accordance with the law.” Fla. Bar v. Hall, 49 So.3d 1254, 1261 (Fla.2010) (quoting Fla. Bar v. Baker, 810 So.2d 876, 882 (Fla.2002)). Moreover, we have consistently stated that basic fundamental dishonesty is a serious flaw, one which cannot be tolerated by a profession that relies on the truthfulness of its members. Fla. Bar v. Rotstein, 835 So.2d 241, 246 (Fla.2002) (citing Fla. Bar v. Korones, 752 So.2d 586, 591 (Fla.2000)). Thus, considering the serious nature of Draughon’s misconduct, and the aggravating and mitigating factors found by the referee, we *572 find that a one-year suspension is the appropriate sanction.
CONCLUSION
Accordingly, Richard Scott Draughon is hereby suspended from the practice of law in Florida for one year. The suspension will be effective thirty days from the filing of this opinion so that Draughon can close out his practice and protect the interests of existing clients. If Draughon notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Draughon shall fully comply with Rule Regulating the Florida Bar 3 — 5.1(g). Further, Draughon shall accept no new business from the date this opinion is filed until the suspension is completed and respondent is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Richard Scott Draughon in the amount of $12,150.21, for which sum let execution issue.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. It is undisputed that Draughon is not licensed to practice law in Pennsylvania. The referee found that he had some degree of communication with, or assistance from, a Pennsylvania attorney in these transactions.

. The referee found that Ms. Onusic signed over the deed with the understanding that Draughon would hold the deed in escrow and not record it until she received full payment under the first promissory note. However, in December 1997, Draughon recorded the deed.

. The referee also recommended that Drau-ghon be found not guilty of violating Rule *569 Regulating the Florida Bar 4-4.3(a) ("In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer’s role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.”). The Bar does not challenge the referee's findings of fact or recommendations as to guilt in this regard, and we approve them without further discussion.