# Supreme Court of Florida

---

No. SC2021-1564

---

**THE FLORIDA BAR,**
Complainant,

vs.

**CURTIS S. ALVA,**
Respondent.

October 17, 2024

PER CURIAM.

We have for review a referee's report recommending that Respondent, Curtis S. Alva, be found guilty of professional misconduct in violation of the Rules Regulating The Florida Bar and that he be suspended from the practice of law for one year and ordered to pay restitution. Respondent has petitioned for review, challenging the referee's recommendations as to guilt and the recommended discipline.[1] For the reasons discussed below, we approve the referee's findings of fact and recommendations of guilt

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

as to Bar Rules 3-4.3 (Misconduct and Minor Misconduct), 4-1.5(a) (Fees and Costs for Legal Services), and 4-8.4(a) (A lawyer shall not violate or attempt to violate the Rules of Professional Conduct . . . .). However, we disapprove the referee's recommendations of guilt as to Bar Rule 4-1.4(b) (Communication) and find Respondent not guilty of violating this rule. We also approve the referee's recommended discipline of a one-year suspension but do not order Respondent to pay restitution.

I

On September 19, 2016, Respondent's law firm Alva & Gleizer, PLLC was engaged to represent Dr. ColorChip Corp. (Dr. ColorChip) and Daniel McCool, the president of Dr. ColorChip, in a dispute against William McLean. The engagement was reduced to writing and signed by McCool in his capacity as the president of Dr. ColorChip.

The engagement letter specified that the hourly rate for attorney time was $400 and that the hourly rate for paralegal time was $100. The engagement letter required McCool and Dr. ColorChip to pay a $25,000 retainer if the matter progressed to litigation. The letter also stated that Respondent would invoice the

clients monthly and that payment would be due within 10 days. Further, the engagement letter explained that the retainer would be applied to any unpaid invoices after 10 days. The retainer was to be held in trust and any unapplied retainer was to be refunded upon termination of the representation. Finally, any amendments to the agreement had to be in writing and signed by all parties.

The court proceedings commenced, and the clients remitted the $25,000 retainer to Respondent to be held in trust. In the months that followed, Respondent invoiced the clients, and the clients promptly paid the invoices. At times, Respondent sent more than one invoice in a month, and on occasion, Respondent asked the clients to pay sooner than 10 days after the date of the invoice.

On January 9, 2018, Respondent sent the "December invoice" for work performed between December 1, 2017, and December 29, 2017. The invoice represented 66.8 hours worked for a total of $25,040. McCool testified that he was out of the country when Respondent sent the invoice. On February 5, McCool notified Respondent by e-mail that he had received the invoice but that the company needed to discuss and review the bill. McCool testified

that he delegated the task of reviewing the invoice to Patricia O'Rourke, an employee of Dr. ColorChip.

In a February 13 e-mail, O'Rourke advised Respondent that McCool had forwarded three invoices, including December, to her for review. In a second e-mail dated February 16, O'Rourke asked Respondent seven questions about the December invoice so she could conclude her review of the invoice. Five days later, O'Rourke sent a follow-up e-mail because she had not received answers to her questions.

On February 21, Respondent replied to O'Rourke's e-mail stating that he would be happy to answer the questions if they were being asked in good faith. He then conditioned his decision to fully respond to the questions on the clients paying $18,240 toward the December invoice. Respondent stated that if the clients did not pay that amount, he would not believe they were questioning the bill in good faith. He also informed the clients that he would either enforce the contract as written and seek the $25,040 or charge the clients a higher rate which would result in a $125,000 bill. Furthermore, Respondent warned that if he believed there was no good faith on the clients' part, he would make a claim for bad faith,

misrepresentation, and punitive damages, seeking treble damages in the amount of $375,000.

McCool sent Respondent an e-mail on February 26, asking questions about the December invoice. That same day, Respondent replied to his e-mail and sent Invoice #95 to the clients, requesting payment in the amount of $126,650. In this invoice, Respondent billed the clients an additional $150 an hour for attorney time and $25 an hour for paralegal time for a total of 1,032.5 hours, representing all the hours that Respondent had previously billed. The effect of this bill was to retroactively and unilaterally increase the hourly rate, above that in the engagement letter, for all the work Respondent's firm previously performed and for which the clients had previously paid. The engagement letter between the parties did not provide for this penalty.

The next day, McCool notified Respondent by e-mail that he had authorized his bank to pay $25,040, the full amount of the December invoice. On March 7, Respondent sent McCool an e-mail thanking him for payment of the December invoice.

However, on March 20, Respondent sent the clients a statement showing that the $25,000 retainer had been deducted

from Respondent's trust account and that the clients owed an overdue balance of $101,834.95 based on Invoice #95 (applying a retroactive increase in the hourly billing rates). On April 9, McCool sent an e-mail to Respondent requesting the return of the $25,000 retainer. The next day, Respondent replied:

> There is no return due. There is a balance due in excess of $100,000.00. The $25,000.00 retainer payment was applied to the unpaid invoice and the balance in your retainer account is $0. Please make a check for the balance and let me know when I can pick it up. If you do not intend to pay in full, please let me know promptly so I can pursue collection.

Ultimately, in a separate civil action, the clients sought return of the $25,000 retainer fee from Respondent's firm, arguing that it amounted to a double payment of the December 2017 invoice. On May 31, 2022, the court granted summary judgment in favor of the clients and a final judgment was entered, ordering that the clients were entitled to the return of their retainer fee.

On these facts, the referee recommended that Respondent be found guilty of violating Bar Rules 3-4.3, 4-1.4(b), 4-1.5(a), and 4-8.4(a). The referee found that the clients had a history of paying Respondent timely and in full for more than one year before they questioned the December invoice and that the clients' request to

- 6 -

review the December invoice was reasonable. Furthermore, the referee did not find reasonable Respondent's claim that the clients were questioning the bill in bad faith. Finally, the referee rejected Respondent's argument that he had a right to nullify the engagement agreement and seek restitution from the clients by charging them at an increased hourly rate retroactive to the initiation of representation for failing to pay the December invoice within 10 days.

In recommending discipline, the referee found four aggravating factors under Standard for Imposing Lawyer Sanctions (Standard) 3.2 (Aggravation): (1) dishonest or selfish motive; (2) refusal to acknowledge the wrongful nature of conduct; (3) substantial experience in the practice of law; and (4) indifference to making restitution. The referee found three mitigating factors under Standard 3.3 (Mitigation): (1) absence of a prior disciplinary record; (2) full and free disclosure to the Bar or cooperative attitude toward the proceedings; and (3) character or reputation.

As a sanction, the referee recommended that Respondent be suspended from the practice of law for one year and ordered to pay the Bar's costs in these proceedings, totaling $22,866.60.

Additionally, the referee recommended that Respondent be ordered to pay restitution in the amount of $25,000 to Dr. ColorChip.

Respondent filed a notice of intent to seek review of the report of referee, challenging the referee's recommendations of guilt as well as the recommended discipline.

II

A

Respondent challenges the referee's recommendations of guilt as to Bar Rules 3-4.3, 4-1.4(b), 4-1.5(a), and 4-8.4(a). To the extent Respondent challenges the referee's recommendations as to guilt, "the referee's factual findings must be sufficient under the applicable rules to support the recommendations as to guilt." *See Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018) (citing *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005)). Ultimately, as the party challenging the referee's conclusions, Respondent has the burden to demonstrate that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007).

Respondent does not dispute the facts of the case but argues that he was permitted to nullify his engagement agreement and demand restitution in the form of a retroactive hourly billing increase because his clients did not pay the December invoice within 10 days of receipt. We disagree.

While restitution is an available remedy for breach of contract, the proper place to seek such a remedy is in civil court. There, a trier of fact would determine if the clients materially breached the engagement agreement by paying the December invoice several weeks late because they had questions about the bill, despite making all prior payments on time.[2]

Instead of following this course of action, Respondent declared his clients' breach sufficient to nullify the contract, refused to

---

2. Demonstration of a material breach "is a prerequisite under the restitution theory." *Beefy Trail, Inc. v. Beefy King Int'l*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972) (citing Corbin on Contracts, Vol. 5, s 1104). "A minor breach by one party does not discharge the contractual duty of the other party; and the latter being still bound to perform as agreed can not be entitled to the restitution of payments already made by him or to the value of other part performances rendered." *Id.* (quoting Corbin on Contracts, Vol. 5, s 1104, at 562-65).

address their billing questions, alleged bad faith, and threatened to sue them for $375,000. He then issued Invoice #95 to the clients, demanding they pay $126,650 that represented increased hourly rates retroactive to the initiation of the representation. Moreover, Respondent then refused to return the $25,000 retainer fee even after the clients paid the full amount owed on the December invoice. In essence, as the referee found, by refusing to return the retainer fee, it was as if Respondent was paid twice for the December invoice. Respondent had no legitimate basis to make these unilateral monetary demands or retain his clients' money in excess of the properly billed amounts pursuant to the engagement agreement.

Moreover, the circuit court in the clients' civil case against Respondent granted summary judgment in favor of the clients and ordered Respondent to return the retainer fee. Respondent concedes that he lost the case and that the retainer fee was returned to the clients. The referee properly relied on the circuit court's findings that the clients had a zero-balance owed to Respondent after they paid the December invoice. *See Fla. Bar v. Gwynn*, 94 So. 3d 425, 430 (Fla. 2012) (noting that a referee in a

Bar disciplinary proceeding may "properly rely upon facts established in orders and decisions of other tribunals to support his or her findings of fact").

B

Turning now to the specific rule violations, Respondent challenges the referee's findings that he violated Bar Rule 3-4.3. That rule states, in part: "The commission by a lawyer of any act that is unlawful or contrary to honesty and justice may constitute a cause for discipline whether the act is committed in the course of the lawyer's relations as a lawyer or otherwise . . . ." As detailed above, Respondent had no legitimate basis to demand the clients pay $126,650 in what he determined were retroactive amounts due, nor to refuse to return the clients' $25,000 retainer fee. This conduct was worsened by his immediate threats to sue the clients when they made, as determined by the referee, legitimate inquiries about the bill. He also refused to answer those questions unless the clients first paid a portion of the bill, despite their consistent history of prompt payments. As such, his actions were "contrary to honesty and justice." *See Fla. Bar v. Cocalis*, 959 So. 2d 163, 166-

67 (Fla. 2007) (finding a lawyer violated rule 3-4.3 by engaging in unprofessional and unethical conduct).

C

Also, Respondent challenges the referee's recommendation that he be found guilty of violating Bar Rule 4-1.5(a), which provides that "[a] lawyer must not . . . charge, or collect an illegal, prohibited, or clearly excessive fee or cost."  A fee is "clearly excessive" if "a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the lawyer" or "the fee or cost is sought or secured by the lawyer by means of intentional misrepresentation or fraud upon the client." R. Regulating Fla. Bar 4-1.5(a)(1)-(2).

The Bar contends that Respondent charged an illegal or excessive fee by charging the clients $126,650, which was the retroactive difference between the amount the clients already paid under the engagement agreement and the amount Respondent believed was the "fair market value" for his work.  As discussed above, we conclude that Respondent had no basis to demand this

- 12 -

payment from his clients. As such, Respondent's attempt to collect this amount by invoicing the clients for the total and then refusing to remit the retainer balance to the clients constituted a clearly excessive and unconscionable fee in violation of this rule. *See Fla. Bar v. Kavanaugh*, 915 So. 2d 89, 93 (Fla. 2005) (finding attorney violated Bar Rule 4-1.5(a) when he retained a contingency fee that was a larger percentage of his client's recovery than was provided for in the contingency fee agreement).

### D

Next, Respondent contests the referee's recommendation that he be found to have violated Bar Rule 4-8.4(a), which proscribes a lawyer from violating or attempting to violate the Rules of Professional Conduct. Because we approve the recommendations of guilt as to Bar Rule 4-1.5(a), we also approve the recommendation of guilt as to this rule. *See Fla. Bar v. Herman*, 8 So. 3d 1100, 1106 (Fla. 2009).

### E

Also, Respondent challenges the referee's recommendation that he be found to have violated Bar Rule 4-1.4(b). The Bar argues, and the referee found, that Respondent failed to properly

inform his clients that he would seek to charge them higher hourly rates if they did not pay the invoice within 10 days.

Bar Rule 4-1.4(b) requires that a lawyer "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The comments to the rule elaborate that "[t]he client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so." The comments also provide examples of the necessary communication between a lawyer and client, such as explaining a negotiation proposal, discussing general strategy and likelihood of success, and consulting on litigation tactics that may result in significant expense.

We find that this rule does not apply to the conduct at issue here. The issue is not Respondent's failure to properly communicate the terms of engagement or provisions of the agreement. The Bar does not allege nor do the facts support that the clients misunderstood or were not properly advised about the terms of the agreement. The issue is that Respondent did not follow

the agreement but instead unilaterally declared the engagement agreement void and then demanded a sum of money from the clients, the amount of which he derived without regard to the rates set forth in the engagement agreement. Therefore, we disapprove the referee's recommendation that Respondent be found to have violated Bar Rule 4-1.4(b).

III

We also address the referee's recommended discipline of a one-year suspension. A referee's recommended discipline must have a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. *See Fla. Bar v. Picon*, 205 So. 3d 759, 765 (Fla. 2016) (citing *Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999)). In reviewing a referee's recommended discipline, this "Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction." *Id.* (citing *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989)); *see also* art. V, § 15, Fla. Const.

Under Standard 7.1 (Deceptive Conduct or Statements and Unreasonable or Improper Fees), "[s]uspension is appropriate when

a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." Whereas a "[p]ublic reprimand is appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."

Respondent argues that under this Standard, a public reprimand, if anything, would be appropriate in his case. However, Respondent fails to address the distinctions between these subdivisions; namely, the subdivisions differ in whether the attorney's conduct was knowing or negligent. Standard 1.2 defines "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." " 'Negligence' is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow . . . ." Fla. Std. Imposing Law. Sancs. 1.2.

Considering these definitions, it is apparent that Respondent acted knowingly. Moreover, his clients were injured because he

refused to answer their questions regarding the December invoice unless they paid $18,240 toward that invoice and threatened to sue them for bad faith seeking $375,000. Then, he invoiced them for $126,650 in an effort to compel the clients to pay higher rates retroactive to the initiation of the representation, and he retained the $25,000 retainer fee even after the clients paid the December invoice. These actions resulted in the clients having to sue Respondent in civil court for the return of their retainer fee and later defend their judgment on appeal. A retainer that they requested be returned in 2018 was not returned to them until the litigation concluded in 2024.

Further, we conclude that considering the aggravating and mitigating circumstances reflected in the record, the recommended sanction of a one-year suspension has a reasonable basis in the Standards. In this case, as noted above, the referee found four aggravating factors and three mitigating factors. "[A] referee's findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record." *Germain*, 957 So. 2d at 621. We find no

error in the determination of these factors and approve the referee's findings.

Our precedent also supports the imposition of a one-year suspension. In *Florida Bar v. Draughon*, this Court rejected the referee's recommendation of a public reprimand and suspended the attorney for one year for one violation of Bar Rule 3-4.3, emphasizing that the Court has "consistently stated that basic fundamental dishonesty is a serious flaw, one which cannot be tolerated by a profession that relies on the truthfulness of its members." 94 So. 3d 566, 571 (Fla. 2012). In that case, a bankruptcy court had determined that Draughon had fraudulently transferred property without consideration to avoid paying a creditor. *Id.* at 568. We explained that this Court "expects members of the Bar 'to conduct their personal business affairs with honesty and in accordance with the law.'" *Id.* at 571 (quoting *Fla. Bar v. Hall*, 49 So. 3d 1254, 1261 (Fla. 2010)). That cannot be said of Respondent's conduct, here. We conclude that he violated Bar Rule 3-4.3 when, without basis in his engagement agreement with the client, he demanded an arbitrary and punitive fee, threatening

the client with collections proceedings that he knew would have been baseless.

In *Florida Bar v. Rush*, 361 So. 3d 796 (Fla. 2023), this Court suspended a lawyer for three years for seeking approximately $1.73 million in attorney's fees, even though the lawyer never established a statutory right to such fees. Rush threatened his clients with a baseless claim of legal fees and costs totaling between $300,000 and $1 million in the event the client fired him, which appeared to be a calculation of what he would have earned as a statutory fee if the litigation was successful. *Id.* at 799. Rush's actions initially dissuaded the clients from terminating representation, but when the clients eventually terminated the representation, Rush sued his former clients and attempted to undo a negotiated settlement. *Id.* at 800. While the misconduct in *Rush* was more egregious than Respondent's and resulted in more significant rule violations, it does bear similarities. This Court determined that it was "patently unreasonable" for Rush to seek compensation based on benefits never obtained. *Id.* at 803. That is what Respondent tried to do here, when he baselessly demanded a fee that had not been agreed to by the parties and refused to refund the client's retainer.

Last, Respondent challenges the referee's recommendation to order him to pay $25,000 in restitution. Since Respondent's appeal has concluded, the Bar concedes that this issue is now moot. Because Respondent has represented to this Court that the $25,000 was held in an appeals bond and has been returned to the clients, we do not order Respondent to pay restitution in this case.

We conclude, based on a review of relevant case law, and the aggravating and mitigating factors found by the referee, that a one-year suspension is the appropriate sanction in this case.

IV

Accordingly, we approve the referee's findings of fact and recommendations of guilt as to Bar Rules 3-4.3, 4-1.5(a), and 4-8.4(a). However, the referee's recommendation of guilt as to Bar Rule 4-1.4(b) is hereby disapproved, and we find Respondent not guilty of violating this rule. Respondent is hereby suspended from the practice of law for one year. Respondent's suspension will be effective 30 days from the filing of this opinion so that he can close out his practice and protect the interests of existing clients. If Respondent notifies this Court in writing that he is no longer practicing and does not need the 30 days to protect existing clients,

this Court will enter an order making the suspension effective immediately. Respondent shall fully comply with Rule Regulating The Florida Bar 3-5.1(h). Further, Respondent shall accept no new business from the date this opinion is filed until he is reinstated. Respondent shall also fully comply with Rule Regulating The Florida Bar 3-6.1, if applicable.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Curtis S. Alva in the amount of $22,866.60, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., concurs in part and dissents in part with an opinion.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

LABARGA, J., concurring in part and dissenting in part.

I concur with the majority's decision as to the referee's findings of fact, findings in aggravation and mitigation, and recommendations of guilt. I also concur with the majority's decision to disapprove the referee's recommendation of restitution.

- 21 -

However, because I cannot agree with the majority's decision to accept the referee's recommendation that Respondent be suspended from the practice of law for one year, I respectfully dissent.

The facts presented during the evidentiary hearing before the referee revealed a hotly contested fee dispute between a lawyer and his clients—a situation not uncommon in our judicial system. Ultimately, the matter was litigated in court where the trial judge granted summary judgment in favor of the clients and Respondent was ordered to return the $25,000 retainer in question. After losing his appeal of the trial court's ruling, Respondent returned the retainer to his former clients as ordered by the trial court and the case came to an end.

In considering the appropriateness of the referee's recommendation, I find it significant that Respondent has been a member of The Florida Bar since September 30, 1999— approximately 25 years. It is even more significant that he has never been disciplined by this Court. While Respondent's actions in his pursuit of legal fees in this case may have been overly aggressive and without legal support, I do not believe his actions warrant a one-year suspension. I would instead impose a public

reprimand to be administered by the President of The Florida Bar before the Board of Governors.

I would also enter a judgment for The Florida Bar for recovery of costs from Respondent Curtis S. Alva in the amount of $22,866.60.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, Mark Lugo Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida, and Joi Pearsall, Bar Counsel, The Florida Bar, Sunrise, Florida,

for Complainant

Curtis Alva of the Law Office of Curtis Alva, Riviera Beach, Florida,

for Respondent